## Benjamin D. Maxham *vs.* Jonathan Day.

An article of personal ornament cannot be taken on a writ of replevin from the person of the defendant, without his consent, even if worn by him for the sole purpose of keeping it beyond the reach of legal process.

Action of tort against a deputy sheriff for refusing to serve a writ of replevin, sued out by the plaintiff against George Spring, to recover possession of a diamond pin with gold settings.

At the trial in the superior court, it appeared that, when the officer was asked to serve the writ of replevin, Spring was wearing the pin as a personal ornament in the bosom of his shirt, with his coat buttoned over it so as to conceal. it from sight, and threatened resistance if the officer should attempt to take it from him. *Lord*, J. ruled that these facts did not excuse the officer, and he alleged exceptions.

*H. Williams*, (*F. H. Dewey* with him,) for the defendant.

*G. F. Hoar & T. Kinnicutt*, for the plaintiff. Replevin proceeds upon the ground that the defendant is a wrongdoer, and that the plaintiff has the present right to lawful restitution. 3 Bl. Com. 145. 5 Dane Ab. 516. Com. Dig. Pleader, 3 K. 1. *Meany* v. *Head*, 1 Mason, 319. Property replevied is taken into the custody of the law in the first instance, and then delivered into the custody of the plaintiff upon his giving adequate security for its return if he shall not maintain his right. The consideration that the article may be of peculiar value to the defendant has no stronger application to a jewel than to a picture. If this defence can be maintained, a man may take property by any means not amounting to theft, and defy the

owner. Replevin was originally instituted to test the legality of distraints, and its principles and rules are to be found in the law of distress. Can it be claimed that chattels distrained might be rendered irrepleviable by being carried upon the person? 3 Bl. Com. 145. Com. Dig. Action, M. 6. Co. Lit. 145 *b.* There is no instance, in which a party has a right to the instant delivery to him, by lawful process, of property, personal or real, in which any such protection as is claimed by the defendant is recognized by law. Bac. Ab. Ejectment, G. 2; Trespass, F. 2. *United States* v. *Lowry,* 2 Wash. C. C. 169. A writ of *habere facias possessionem* may be executed by breaking doors. *Howe* v. *Butterfield,* 4 Cush. 302. A house may also be broken for the service of a replevin writ. *Semayne's case,* 5 Co. 91. Bac. Ab. Replevin, E. 7. 3 Bl. Com. 149. Gilbert on Distresses, 78. And the house is more sacred than the person. The right to retain wearing apparel on the ground of decency is like the protection from molestation of a man who is sick or dying. The cases relating to attachment on mesne process or execution of property of the defendant are not applicable to the taking by replevin of the specific property of the plaintiff. The remedy in equity is of recent statute origin, and is bounded by the common law remedy, for it extends only to goods secreted or detained so that they cannot be replevied. Rev. Sts. *c.* 81, § 8. Gen. Sts. *c.* 113, § 2.

BIGELOW, C. J. Replevin at common law is founded on the wrongful taking of personal property; and is a remedy, by which the person, from whom goods or chattels are taken, may be restored to the possession of them until the question of title can be judicially tried and determined. It has been said that in England this action is confined to cases of taking property by distress. In a certain sense, this may be true. In practice, it would seem that the remedy by replevin is seldom, if ever, resorted to there, except for the purpose of trying the question whether goods are rightfully distrained; and in such cases the method of prosecuting the suit is not by writ at common law, but by the more simple and speedy mode of a complaint to the sheriff under *St.* 52 H. 3, *c.* 21, commonly called the Statute

of Marlebridge. But notwithstanding the disuse of the writ of replevin at common law in the English courts, it is still recognized in works of authority as being an appropriate and legitimate method by an owner of goods or chattels, alleged to have been unlawfully taken, to obtain possession of them until the question of title can be determined. 3 Bl. Com. 147. Com. Dig. Replevin, A; Pleader, 3 K. 1. *Shannon* v. *Shannon,* 1 Sch. & Lef. 327, & note. Selw. N. P. 1185. Wilkinson on Repl. 2. See also *George* v. *Chambers,* 11 M. & W. 149; *Mennie* v. *Blake,* 6 El. & Bl. 842. So the law has been understood in this commonwealth. *Ilsley* v. *Stubbs,* 5 Mass. 280. *Badger* v. *Phinney,* 15 Mass. 362. *Baker* v. *Fales,* 16 Mass. 147. And our statute, Gen. Sts. *c.* 143, § 10, which gives to the owner of goods unlawfully taken the right to sue out and prosecute a writ of replevin, would seem in this respect to be only declaratory and in affirmance of the common law, and to confer no new remedy or additional right for the recovery of property tortiously taken from the owner. In our practice it is often resorted to, instead of an action of trespass or trover, as a simple and convenient method of trying the title to goods and chattels. It is a purely personal action, which any party may commence, as of right, by suing out a writ, without preliminary oath or other formality, in like manner as other civil suits are brought. Its peculiar and distinguishing characteristic is, that it takes the property in controversy from him who by his possession of it is *prima facie* its owner, and places it in the hands of the plaintiff, substituting in its stead a personal security in the form of a bond to the defendant for its return if such shall be the final judgment of court.

But although replevin is at common law a general remedy to recover property wrongfully taken, it does not follow that it is of universal application, so that it can be effectually used in all cases, whatever may be the condition or situation of the property. Remedies are always to be used and applied in subordination to the great principles of right, which it is the object of the law primarily to secure and protect. Redress is not to be obtained by doing a wrong. A person cannot use the process of

law in vindication of his own rights in such way as to invade those of another. To illustrate : A creditor can in certain cases arrest the body of his debtor; this is a clear legal right; but it cannot be exercised by a forcible entry of the debtor's dwelling, because such an act would infringe on another right equally clear, by which a man's house is made a place of shelter and repose, which no one armed only with civil process can break into or disturb. So a criminal is liable to arrest and to have his person and premises searched; the good order and safety of the community require that this right should be enforced; but it cannot be done without warrant under oath, specially designating the person and object of search and arrest, because that would be contrary to the right of every person to be secure against unreasonable searches and seizures. The truth is, that in determining whether a particular remedy is applicable or appropriate in any case, it is not sufficient to consider whether it will be effectual to redress the grievance or vindicate the right of one party. An equally essential and necessary inquiry is to ascertain whether it can be employed without an infringement of the rights and privileges of the other party. If it cannot be, then it follows that the law will not sanction it. There are cases, no doubt, in which legal process, lawfully used, may cause inconvenience and hardship, and even operate oppressively on those against whom it is directed; but we know of no case in which it can be legitimately made the instrument of wrong, or the means by which private rights can be invaded or taken away.

It seems to us, on careful consideration, that this action cannot be maintained without coming in conflict with this plain and elementary principle. The proposition on which the plaintiff must rest his case amounts, when examined, to this; that on a process in its nature purely civil an officer is bound to seize and search the person of the defendant. The statement of such a proposition carries with it a sufficient refutation. Its practical recognition would lead to a palpable infraction of the cardinal principle by which, under our constitution and laws, the sanctity of the person is guarded from unfounded and ground-

less searches and arrests. There is nothing in the nature of a writ of replevin, which gives to it any efficiency or power over the person, superior to other civil process. It may be sued out at the will of any person who sees fit to assert a title to property in the possession of another; no oath or other sanction is required to prevent its misuse or abuse; even the right of property, which it seeks to establish, may on investigation prove to be wholly without foundation. How then can it be contended that it confers on an officer an authority, which cannot be exercised even under a criminal process, except when it is verified by oath and issued with the formalities required by the constitution and laws?

Certainly no precedent or authority has been cited, and none, we believe, can be found, that sustains the doctrine which the plaintiff must establish in order to maintain this action. In England, as we have already said, the process of replevin is used only in cases where property has been distrained, for the purpose of trying the legality of the seizure, and is confined chiefly, if not entirely, to beasts of the field and of the plough, implements of husbandry, household goods, and other chattels, not found or used on the person; and in Ireland, where the writ of replevin at common law is still a common remedy to try the title of goods and chattels in any way wrongfully taken, no case is found in which it has been used for the purpose of taking articles of clothing, or of personal use or adornment, from the person of the defendant. In a matter of this sort, relating, as it does, to the extent of the power conferred on an officer in the service of a process known to the common law from the earliest period, we regard the entire absence of authority in support of the right claimed by the plaintiff to be a strong argument against its existence.

It was urged by the counsel for the plaintiff, as giving color to his argument that a writ of replevin had a peculiar force and that in serving it extraordinary authority might be exercised by the sheriff, that at common law the outer door of a dwelling-house might be forced in order to replevy the property described in the writ. The chief authority cited in support of this posi-

tion is *Semayne's case*, as reported in 5 Co. 91. But on ex-
amination it will be found not to sustain it. The fifth resolu-
tion in that case only affirms the familiar principle, which is
applicable to the service of all civil process, that a dwelling-
house does not protect the person of a stranger who, on pur-
suit, flies thither and takes refuge; nor the property of a person,
not the owner or tenant of the house, which is brought there
to prevent execution and to escape the ordinary process of
law, or, as it is said, which is placed there "by fraud and
covin." So a writ of replevin might be served in like manner
by a forcible entry of a house when a distrainor "conveys the
goods of another, which he has distrained, to his house or castle,
to prevent the owner to have replevin;" that is, when a person
fraudulently and covinously uses his house to take the property
of a third person out of the reach of the process of the law.
And this principle of the common law was affirmed by *St.*
Westm. 1, *c.* 17, which was passed to prevent the mischief aris-
ing from the practice of driving distress into strongholds by the
barons, so that "the poorer sort suffered so much from the men
in power." Gilbert on Distresses, 78, 79. 2 Inst. 193, 194. 5 Co.
(ed. 1826) 93 *a,* note. It is not therefore correct to say that an
officer may in any case enter a dwelling-house by force to make
service of a writ of replevin. If such right can be exercised at
all, except when goods distrained are taken by the distrainor into
his house with the design to place them beyond the reach of the
owner, (which may well be doubted,) it cannot be extended to
cases where there is no evidence of fraud or of an attempt to
conceal the property of another person in a house for the purpose
of avoiding service of the writ. In this respect, the authority of
an officer in the service of a writ of replevin would seem to be
substantially the same as that which can be lawfully exercised
in executing other civil process. Certainly there is nothing in
any view which can be taken of the language used in *Se-
mayne's case* and in other books of authority, which either di-
rectly or by analogy sustains the right of an officer to replevy
from the body of the defendant articles carried or worn about
the person.

The exercise of such a power is not only contrary to right and unsupported by authority, but it is also inconsistent with sound policy.    Practical jurisprudence looks, in the application of remedies, to the peace, good order and decorum of society. The evils which would flow from the unrestricted use of a civil process to search the person and to seize from it articles of dress or use or ornament are obvious and manifold.    It would bring the officer of law in direct contact with the citizen, under circumstances well calculated to excite irritation and anger, and lead directly to breaches of the peace.    It would place in the hands of wicked and evil disposed persons the means of annoyance and injury, and the power to interfere wantonly and without just cause with the most sacred rights of the person. If the right exists at all, it cannot be limited to particular articles of use or adornment, but must extend to every article of apparel worn by persons of either sex, and might be lawfully exercised at the sacrifice of decency and the proprieties of life. The reasons on which the restraint upon the power of taking articles from the person by distress or by attachment and execution is founded apply with equal force to the right to take them by replevin.    *Sunbolf* v. *Alford,* 3  M. & W. 248.    *Mack* v. *Parks,* 8 Gray, 517.

Nor is there any necessity for giving such a remedy to recover property of this nature.    A bill in equity under Rev. Sts. *c.* 81, § 8, (Gen. Sts. *c.* 113, § 2,) to compel the redelivery of goods or chattels taken or detained from the owner and withheld so that the same cannot be replevied, would afford ample redress in all cases where the property is so situated that it cannot be taken without an interference with the person.

*Exceptions sustained.*


At a second trial in the superior court, the plaintiff conceded that, when the defendant was asked to serve the replevin writ, the pin was affixed to the bosom of Spring's shirt, in the manner in which breastpins are usually worn; but offered to prove that Spring had placed it there, not as an article of wearing apparel or personal ornament, but for the sole purpose of keep-

ing it out of the reach of legal process, knowing that he had no valid title to it; and that the defendant might have seized it. But *Morton*, J. excluded the evidence, and ruled that, under the circumstances conceded and offered to be proved, the defendant was excused from serving the writ of replevin. The plaintiff submitted to a verdict for the defendant, and alleged exceptions, which were argued at October term 1861.

*Hoar*, for the plaintiff. The plaintiff refers to the authorities and suggestions at the first argument. The question now presented is whether any article small enough to be kept by a defendant on his person is irrepleviable. Can a landlord distrain his tenant's watch for rent, and by keeping it on his person prevent the legality of the distress from being tested? If a child, too young to be punished for larceny, seizes in a jeweller's shop a valuable diamond, is there no legal process by which the possession can be restored to the proper owner?

*Dewey & Williams*, for the defendant.

BIGELOW, C. J. The facts now offered to be proved in support of this action do not change the result at which we arrived in considering the case as presented at the former hearing. It was then determined that replevin did not lie at common law for articles of dress or personal adornment, alleged to have been unlawfully taken, and which were actually worn on the person at the time when the service of the writ of replevin was attempted. The necessity of securing immunity to the person from unreasonable searches and seizures, and the impolicy of allowing an unlimited power to an officer to take on civil process articles worn on the person, forbid the extension of the remedy by replevin to property so used and situated. A bill in equity for property unlawfully withheld affords an ample remedy to recover possession of property of such a nature.

*Exceptions overruled.*