Roseman, J.
The plaintiff filed suit claiming that the defendants intercepted her wire and oral communications in violation of G.L.c. 272, §99, invaded her privacy in violation of G.L.c. 214, §1B, sexually harassed her in violation of G.L.c. 214, §1C, intentionally inflicted emotional distress, intentionally interfered with advantageous relations, assaulted her, conspired to do the foregoing and violated her rights protected by the Massachusetts Civil Rights Act, G.L.c. 12 §§ 11H and I. Defendants answered. Defendants Itagaki and Jain filed counterclaims alleging sexual harassment in violation of G.L.c. 214, §1C (Count I), abuse of process (Count II), abuse of process (Count III), violation of G.L.c. 12, §§11H and I (Count IV), intentional, reckless and/or negligent infliction of emotional distress (Count V), and interference with advantageous relations (Count VI).[2]
Plaintiff, pursuant to G.L.c. 231, §59H (“§59H"), now moves to dismiss Counts II through VI of the Counterclaim, asserting that the conduct therein alleged is protected under §59H. Defendant contends that plaintiffs conduct does not constitute a lawful exercise of her right to petition government, but rather is private, tortious behavior not within the protected ambit of §59H. For the following reasons, plaintiffs special motion to dismiss is denied.
BACKGROUND
The standard of review under G.L.c. 231, §59H is different than that employed when a party moves for entry of judgment on the pleadings (Mass.R.Civ.P. 12(c)), for dismissal for failure to state a claim (Rule 12(b)(6)), orforsummaryjudgment(Rule56). Wigwam Associates, Inc. v. McBride, Civil Action No. 92-01570A (Worcester Super. Ct. October 18, 1995) [4 Mass. L. Rptr. 461, 462].[3] When considering the special motion to dismiss, the Court must consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based. G.L.c. 231, §59H. A review of these materials discloses the following.
During the 1993-94 academic year, plaintiff and defendant were first-year students at Harvard College. Both lived in a dormitory known as Lionel B. It is alleged in the Counterclaim that from the beginning of the school year, plaintiff engaged in conduct, such as entering his suite at all hours without being invited to do so, instigating conversations centering on sexual topics, and threatening to cause physical harm to defendant, which was unwelcome.
In January 1994, the Administrative Board of Harvard College (the “Ad Board”) began investigating plaintiffs allegations that the defendant had wiretapped her phone during the previous semester. In February, the Ad Board referred the matter to the Middlesex County District Attorney’s Office and stayed its own investigation pending the outcome of the District Attorney’s investigation.
In May 1994, the District Attorney informed defendant’s counsel that he was contemplating three courses of action, including negotiating a plea bargain to an indictment. Ultimately, the District Attorney decided to forego action pending the outcome of the Ad Board’s investigation.
It is alleged in the Counterclaim that in August 1994, plaintiff began pressuring the Ad Board to resume its investigation. At the same time, plaintiff allegedly pressured the District Attorney to indict the defendant. By letter dated August 15, 1994, the Ad Board informed defendant that it would resume its investigation at the start of the 1994-95 school year. In September, plaintiff filed a new statement with the Ad Board accusing defendant of sexual harassment.
Between September 26 and October 11, 1994, counsel for plaintiff and defendant discussed a settlement of all issues between the parties. Defendant contends by affidavit that during their first meeting on September 28, 1994, counsel for the plaintiff informed them that plaintiff intended to file a civil action charging wiretapping and sexual harassment. Plaintiff counters that the subject of a civil action was first raised by defendant and that she simply responded that it was one of her options. Plaintiffs counsel, it is alleged by defendant, also stated that the District Attorney would prosecute the defendant in Superior Court unless plaintiff declared herself to be “satisfied,” and that plaintiff would not be “satisfied” unless defendant agreed to resolve all issues, namely the Ad Board proceedings, the civil claim and the criminal charges. By affidavit, plaintiff contends that defendant’s counsel was the first to link the civil claims to the resolution of the criminal and Ad Board matters.
By letter dated September 29,1994, plaintiff offered to “resolve” her civil claims against the defendant if he made payment of $49,250.00 and withdrew from Harvard for two years. The letter did not mention criminal charges; however, defendant asserts that this topic remained part of the negotiations. On several occasions in response to plaintiffs demands, defendant’s counsel allegedly told plaintiff that he was “uncomfortable” discussing the resolution of the threatened civil action in conjunction with the threat of an indictment, which it is claimed, the plaintiff was prodding the District Attorney to seek. Plaintiff, according to defendant, repeatedly downplayed such concerns. Plaintiff counters that it was her attorney who first expressed discomfort with the tenor of the settlement discussions because defendant’s counsel first linked the resolution of the civil and criminal matters. At one *673 point, counsel for both conferred with an Assistant District Attorney regarding the propriety of their discussions and were informed that he did not have a problem with the substance of their negotiations.
On October 13, 1994, defendant terminated settlement discussions. Subsequently, he withdrew from Harvard. In March 1995, he appeared in East Cambridge District Court; his case was continued without a finding after admitting to certain facts.
DISCUSSION
Plaintiff argues that Counts II through VI of the Counterclaims are barred by §59H, commonly referred to as the Massachusetts “SLAPP[4] statute.” Section 59H provides for a special motion to dismiss “in any case in which a party asserts that the civil claims, counterclaims or cross claims against said party are based upon said party’s exercise of its right to petition under the constitution of the United States or of the Commonwealth.” The statute provides that, in order to defeat the motion to dismiss, the non-moving party, the counter claimant, bears the burden of showing (1) the movant’s exercise of her right to petition was “devoid of any reasonable factual support or arguable basis in law,” and (2) that the counter claimant was injured by the movant’s acts. Id. However, although §59H is silent, this Court, persuaded by the reasoning of the Court of Appeal in Wilcox et als v. The Superior Court (Peters), 27 Cal.App.4th 809, 819, 33 Cal.Rptr.2d 446, 452 (1994), concluding, in construing California’s version of SLAPP, that it is “fundamentally fair” and “logical” to require a party seeking to benefit from SLAPP to make, in the first instance, a prima facie showing of the statute’s applicability— burden on defendant in cross claim to show that cross claim “should be tested under [the statute and] burden on the plaintiff to show the [cross claim] meets that test,” id. 452 — rules that the moving party at the threshold must show the statute is applicable.[5] For reasons set forth the Court rules that plaintiff has failed to satisfy her initial burden.
To determine whether §59 is applicable, it is necessary to examine the elements of the causes of action of Counts II through A/I and the type of conduct alleged therein.
A. Counts II and III 1. Abuse of Process
To make out a claim for abuse of process, plaintiff must show that defendant (1) used “process” (2) to accomplish an ulterior or illegitimate purpose for which the process was not intended or designed, and which (3) damaged plaintiff. Jones v. Brockton Public Markets, Inc., 369 Mass. 387, 389 (1975); Quaranto v. Silverman, 345 Mass. 423, 426 (1963). In addition, plaintiff must show that defendant acted with malice; in this context, malice consists of doing a wrongful act while knowing that it is wrongful. Foley v. Polaroid Corp., 400 Mass. 82, 100 (1987). However, a plaintiff is not required to show that defendant’s act of invoking process was groundless (as would be required in a claim for malicious prosecution) because the “gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish.” Keeton and Prosser on Torts, §121 (5th ed. 1984) (emphasis added); see also Restatement (Second) of Torts, §682, comment, to wit, (“[t]he subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed”); Fishman v. Brooks, 396 Mass. 643, 652 (1986); Kelley v. Stop and Shop Cos., 26 Mass.App.Ct. 557, 558 (1988) (citing Restatement).
Under Massachusetts law, “process” refers to the “papers issued by a court to bring a party within its jurisdiction.” Jones, 369 Mass. At 390; see also Powers v. Leno, 24 Mass.App.Ct. 381, 383 (1987). The cases establish that the instigation of a criminal proceeding or the “influence over those in charge of the prosecution” is sufficient to establish the element of “use of process.” Leventhal v. Dockser, 358 Mass. 799, 799 (1970); see also Jones, supra.
Here, defendant alleges that plaintiff committed abuse of process in that she did not petition the District Attorney to prosecute the defendant in order to bring him to justice for alleged criminal conduct; rather, it is contended that she advocated prosecution to leverage criminal process to force defendant to settle her civil claims against him and to deter exercise of his rights before the Ad Board. The Court, assuming the allegations are sufficient to support a claim for abuse of process, turns to the question of applicability.
2. Applicability of §59H
Massachusetts enacted §59H principally in an effort to combat the increase in lawsuits that appeared to be designed to chill one’s lawful exercise of a right to petition government for redress of grievances. The statute defines a party’s “exercise of its right of petition” to include any written or oral statements submitted to a governmental body in connection with any issue under that body’s review; any statement likely to encourage consideration or review by a governmental body; any statement likely to enlist public participation in an effort to effect such consideration; and, generally, any statement falling within the constitutional right to petition government. G.L.c. 231, §59H. In essence, the burden on the right of petition was the target of the legislation.
As recited in Wilcox, the evil to be addressed is a civil action initiated “to obtain an economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff.” Id. 450. Such an advantage often times is expressed by meritless law suits designed “to tie up the defendant’s resources for a sufficient length of time to accomplish plaintiff’s underlying objective,” id., which is to divert the defen *674 dant and dimmish, if not deter, his/her ability to wage the cause for which the action was brought, whether the forum is executive, legislative or judicial. Thus, the legislative attempt to identify such meritless activity, meritless lawsuits masquerading as ordinary ones, id, and provide the alleged victim with procedural devices allowing for prompt and, hopefully, inexpensive remedy. Hence, the special motion to dismiss, a legislatively mandated device to remove the burden of a sham claim. Nor is the notion of such a remedy exactly novel or recent. See, Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), and United Mine Workers v. Pennington, 381 U.S. 657 (1965), exempting from the Sherman Act a publicity campaign to enact legislation that would destroy a competitor and from lobbying efforts intended to destroy competition unless such activities were a sham.
The pleadings and affidavits in this case present disputes about material facts. Nevertheless, under any construction of the alleged events, the conduct which is targeted in Counts II and III of the counterclaim includes plaintiffs use of process, her alleged communications with the District Attorney. Section 59H, it appears, would protect that activity as “reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body,” or statements made in connection with an issue under consideration or review by such a body. However, the element of ulterior motive or illegitimate purpose for which the process was not intended or designed (i.e. using process as a threat or club to extort or coerce some collateral advantage which is not part of the proceeding, such as the surrender of property or the payment of money[6]) is not protected by SLAPP. Thus, the question arises whether §59H applies where it protects activity, proof of which is required to satisfy one element of a cause of action, but has no application to the other elements.
The language of the statute providing for a special motion to dismiss “in any case in which a party asserts that the . . . counter claims against said party are based upon said party’s exercise of its right of petition under the constitution of the U.S. or of the Commonwealth” is instructive and, in the mind of this Court, determinative. The claims of Counts II and III of the counterclaim are not based upon the plaintiffs exercise of her right of petition as such but upon that exercise and other alleged conduct constituting the other essential elements of the common law tort of abuse of process. To read SLAPP as plaintiff would have us — dismissal mandated where SLAPP is implicated by only one element of the cause of action — does not fit the language of the statute and, in this instance, would result in abolishing that theory. In the absence of clear evidence that such was the legislature’s intent — assuming, in light of the statutory language, there is room to consider intent — that, the Court will not do. See Commonwealth v. Rumford Chemical Works, 82 Mass. 213 (1860) — statute is not to be construed to repeal common law unless the intent to alter it is clearly expressed.
Following Wilcox, the Court rules that plaintiff has not met her obligation at the threshold to show that §59H is applicable.
B. Count IV
1. Violation of G.L.c. 12, §§11H and I
General Laws C. 12, §§11H and I provide relief where plaintiff shows that defendant, by “threat, intimidation or coercion,” attempted to interfere or interfered with a right secured by the constitution or laws of either the United States or the Commonwealth. Here, the claims are that plaintiff, through abuse of process and sexual harassment, sought to interfere with his right to an education, to be free from sexual harassment, to be free from misuse of legal process and to exercise his due process rights.
2. Applicability.
Without passing on the sufficiency of the allegations in stating a claim,[7] it appears that defendant’s claim for violation of §§ 11H and I stems from the harm which allegedly he suffered as a result of plaintiffs alleged abuse of process. Accordingly, for the reasons stated in Part A (2) above, the Court rules that §59H is inapplicable.
C. Count V
1. Intentional, Reckless or Negligent Infliction of Emotional Distress
In general, to make out a claim for intentional or reckless infliction of emotional distress, it must be shown that defendant, without privilege to do so, committed an intentional act, amounting to extreme and outrageous conduct, which caused the plaintiff severe emotional distress. Agis v. Howard Johnson Co., 371 Mass. 140 (1976). With regard to a claim for negligent infliction, the conduct only need be negligent but plaintiff must show physical injury caused by emotional distress. See Payton v. Abbott Laboratories, 386 Mass. 540, 555-56 (1982).
2. Applicability
Given that defendant’s claim for intentional or negligent infliction of emotional distress is based on the same conduct which supports his claim for abuse of process, the Court, for reasons stated above, does not apply §59H to Count V. Moreover, defendant, as an independent ground for relief, asserts that Count V derives from his claim of sexual harassment. The conduct alleged in the latter does not constitute an exercise of the right to petition and §59H therefore is inapplicable.
D. Count VI
1. Interference with Advantageous Relations
To establish a claim for intentional interference with advantageous relations, plaintiff must show the existence of a business relationship or contemplated contract of economic benefit, that defendant was *675 aware of such a relationship and maliciously and intentionally interfered with it, thereby causing plaintiff to lose the advantage of it. ELM Medical Laboratory, Inc. v. RKO General, Inc., 403 Mass. 779, 787 (1989). It has been noted that “the spectrum of relationships protected by the law is broad. Almost any relationship of economic advantage to the plaintiff is within the tort.” Nolan and Sartorio, 37 Massachusetts Practice: Torts, §98.
2. Applicability
As with the claim for intentional/negligent infliction of emotional distress, defendant contends that his cause of action in Count VI is derivative of his claims of abuse of process and sexual harassment. Accordingly, for reasons stated, the Court rules §59H inapplicable to Count VI.
ORDER
For the foregoing reasons, it is hereby ORDERED that plaintiffs special motion to dismiss pursuant to G.L.c. 231, §59H he and the same is DENIED.

The Court has been notified that Defendants Jain and Moynahan have settled with plaintiff. Therefore, the Court will only refer to one “Defendant” and one “Counterclaim.”

The Wigwam Court noted that, in enacting §59H over the Governor’s veto, the Legislature rejected an amendment proposed by the Governor which would have entitled a party moving under §59H to file a motion to dismiss, for judgment on the pleadings, for failure to state a claim or for summary judgment.

The acronym stands for “strategic litigation against public participation," which in fact is the official title of §59H.

California’s SLAPP statute is similar to Massachusetts’ in that it is “silent” as to which party bears the burden of establishing the statute’s applicability. Cal. Code Civ. Pro. §425.16.

See Cohen v. Hurley, 20 Mass.App.Ct. 439, 442 (1985).

It appears that access to the Courts is the only “right” which has been explicitly provided for in the laws and constitution of the U.S. or the Commonwealth. There does not appear to be a specifically enumerated right to a private education. As for sexual harassment, defendant cites G.L.c. 214, §1C. Section 1C provides that “a person shall have the right to be free from sexual harassment, as defined in [c. 151B and 151C].” (Emphasis added). However, chapters B and C apply respectively to sexual harassment by employers and educational institutions; therefore, it is questionable whether c. 214, §1C applies to conduct of a private individual. In fact, those courts which have addressed section 1C have described it as “supplemental” to the relief provided under chapters 151B and C. See Great Atlantic and Pacific Tea Company v. Gregori, 885 F.Supp. 308, 313 (D. Mass. 1995); see also Clarke v. Kentucky Fried Chicken of California, Inc., 57 F.3d 21, 26 (1st Cir. 1995) (“section 1C encompasses only sexual harassment claims which are employment-based"). Count I, which is not addressed by the motion to dismiss, alleges a violation of c. 214, §1C.