Lauriat, Peter M., J.
This case arises out of incidents of alleged workplace sexual harassment. The plaintiff, Stacy Fader (“Fader”) filed a six-count complaint that the defendants Great Harbor Yacht Club, *369 Inc. (“the Yacht Club”) and Stephen Creese (“Creese”) (collectively, “the defendants”) now move to dismiss. The defendants assert in their first motion that Counts I and II are barred by the relevant statutes of limitations, and that Counts I-VI should have been raised as compulsory counterclaims in a prior lawsuit. The defendants claim in their second motion that Counts III-VI should be dismissed pursuant to the Anti-SLAPP statute. For the following reasons, the defendants’ motions are denied.
BACKGROUND
The following facts are taken from the complaint. In 2008, Fader began working as the Spa and Fitness Director at the Yacht Club. That summer, two Yacht Club members touched Fader inappropriately, and made offensive and inappropriate comments to her about her body and the bodies of other female employees. One of the members was Franklyn DeMarco (“DeMarco”). Fader reported these acts to her supervisor, Michael Mooney. The Yacht Club told Fader it was her responsibility to handle the matter.
In the summers of 2009 and 2010, DeMarco continued making inappropriate physical sexual contact, comments about her body, and used sexual innuendo during spa treatments. In June 2010, Creese took over as Fader’s supervisor, and Fader reported DeMarco’s actions to him. The Yacht Club hired an attorney to investigate, and the attorney concluded that DeMarco had sexually harassed Fader and other female employees. In response, the Yacht Club Commodore, Louis V. Gerstner, Jr. (“Gerstner”), asked DeMarco to apologize and to stay out of the Spa and Fitness center temporarily. Gerstner urged Fader not to pursue her complaints any further, and assured her that if she still felt uncomfortable about DeMarco at the start of the 2011 season, the Yacht Club would revisit the matter. Fader regularly encountered DeMarco on the grounds of the Yacht Club for the remainder of the 2010 season, and Fader remained in constant fear for her safety and well-being.
As the summer of 2011 approached, Fader was overcome with anxiety and fear over DeMarco’s return to the Yacht Club. On June 28, 2011, Fader expressed her concerns to Creese and asked that the Yacht Club take appropriate measures to protect her and other female staff members from DeMarco. Creese told Fader that nothing would be done, and told Fader to take a personal day. On June 29, 2011, Creese again told Fader to take a personal day, and when Fader refused citing the work she had to complete, Creese informed her that she was going to be terminated by the Yacht Club.
The Yacht Club asked Fader to sign a form releasing the Yacht Club from any potential claims Fader had against it in relation to any sexual harassment she may have experienced. In return, the Yacht Club offered her two months salaiy, a notation that she was fired “without cause” in her file and permission to remain in Yacht Club housing. If she did not sign, she was informed that her file would indicate she was fired “for cause,” her benefits would be stopped immediately, she would not receive severance, she would be formally evicted from her housing and that the Yacht Club would “take every action necessary.” Fader refused to sign, and she was formally terminated on July 8, 2011.
On July 25, 2011, the Yacht Club filed a lawsuit against Fader claiming that it suffered financial harm as a result of Fader’s failure to perform her job duties, and that Fader misappropriated pictures of the Spa and Fitness Center for her personal use. Fader determined that the cost of defending the lawsuit would exceed the recovery sought by the Yacht Club and offered to settle for the full amount sought. The Yacht Club refused. The case was tried on September 24 and 25, 2013, and the jury returned a verdict in favor of Fader. Fader moved for costs and attorney fees alleging that the lawsuit was frivolous, but her motion was denied.
On April 27, 2012, Fader filed a complaint with the Massachusetts Commission Against Discrimination (“the MCAD”) alleging the Yacht Club subjected her to a hostile work environment and retaliated against her in violation of G.L.c. 15 IB, §4(4). On October 11, 2012 the MCAD found probable cause to credit Fader’s allegations. On March 13, 2014 Fader withdrew her complaint in order to pursue a private action in the Superior Court. Fader filed the present action on March 18, 2014, alleging that the Yacht Club subjected her to a hostile work environment in violation of G.L.c. 15 IB (Count I); retaliated against her by firing her for complaining about being sexually harassed in violation of G.L.c. 151B (Count II); retaliated against her by filing a baseless lawsuit in violation of G.L.c. 15IB (Count III); retaliated against her by interfering with her ability to collect unemployment benefits in violation of G.L.c. 15 IB (Count IV); abuse of process (Count V); and malicious prosecution (Count VI).
DISCUSSION
I. Motion to Dismiss (Paper #5)
A motion to dismiss “argues that the complaint fails to state a claim upon which relief can be granted.” Jarosz v. Palmer, 436 Mass. 526, 529 (2002); Mass.R.Civ.P. 12(b)(6). In considering such a motion, the court accepts as true all well-pleaded factual allegations of the complaint and draws every reasonable inference in favor of the plaintiff, but disregards conclusions and characterizations. See Sisson v. Lhowe, 460 Mass. 705, 707 (2011); Welch v. Sudbury Youth Soccer Ass’n, Inc., 453 Mass. 352, 354 (2009). The Court also considers exhibits attached to the complaint and public records. Iannacchino v. Ford Motor Co., 451 Mass. 623, 631 n.14 (2008). To survive the motion, the complaint must set forth “allegations plausibly suggesting (not merely consistent with)” an entitlement to relief; the facts alleged must be “enough *370 to raise a right to relief above the speculative level.” Id. at 636, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007).
A. Statutes of Limitation
The Yacht Club argues that Fader’s hostile workplace claim (Count I) is barred by the statute of limitations because all of the alleged sexual harassment took place outside of the relevant statutory periods.
A party alleging a violation of G.L.c. 15 IB must first file a complaint with the MCAD within 300 days of the alleged violation. Id. at §5. However, “[a] plaintiff who demonstrates a pattern of sexual harassment that creates a hostile work environment and that includes conduct within the [300-day] statute of limitations, may claim the benefit of the continuing violation doctrine and seek damages for conduct that occurred outside the limitations period, unless the plaintiff knew or reasonably should have known that her work situation was pervasively hostile and unlikely to improve.” Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 539 (2001).
Taking the alleged facts as true and making all reasonable inferences in favor of the plaintiff, Sisson, 460 Mass. at 707, the complaint asserts that Fader was subject to a hostile work environment through July 8, 2011, when she was terminated. July 8, 2011 is within the 300-day statutory period. Fader had no reason to know any earlier than her termination that her situation was unlikely to improve. Cf. Pelletier v. Town of Somerset, 458 Mass. 504, 524 (2010) (despite ongoing sexual harassment plaintiff had no reason to know situation unlikely to improve until after she lost formal grievance); Williams v. City of Holyoke, 84 Mass.App.Ct. 1111, 5-6 (2013) (Rule 1:28 Order) (that plaintiff continued to work despite pattern of sexual harassment over two years showed she had no reason to know situation unlikely to improve).
A party who brings a claim in Superior Court alleging a violation of G.L.c. 151B must do so within three years of the final allegedly unlawful act. Id. at §9. As stated, the complaint alleges a hostile workplace through her termination on July 8, 2011. Fader filed her complaint on March 18, 2014, within the three-year statutory period.
The Yacht Club also argues that Fader’s retaliatory termination claim (Count II) is barred by the three-year statute of limitations, and it asserts that she was terminated on June 29, 2011. The court takes judicial notice of the Verified Complaint the Yacht Club filed in its previous action against Fader in which it swore, under the penalties of perjury, that Fader was terminated on July 8, 2011. Jarosz, 436 Mass. at 530 (a judge may take judicial notice of the court’s records in a related action). The Yacht Club is barred from asserting otherwise by the doctrine of judicial estoppel. Otis v. Arbella Mut. Ins. Co., 443 Mass. 634 (2005). The position the Yacht Club asserts in the present action is inconsistent with the position it previously asserted; the Yacht Club convinced the court through its verified complaint to accept its prior position, and the Yacht Club would derive an unfair advantage from asserting its current position. Id. at 641-42 (elements of judicial estoppel).
B. Compulsoiy Counterclaims
The Yacht Club next argues that all six claims should be dismissed because Fader should have raised them as compulsory counterclaims in the prior action. The Yacht Club is incorrect.
Rule 13 requires a party filing a responsive pleading to “state as a counterclaim any claim for relief the court has power to give which at the time of serving the pleading the pleader has against any opposing parly, if it arises out of the transaction or occurrence that is the subject matter of the opposing parly’s claim.” Mass.R.Civ.P. 13(a). The phrase “transaction [or occurrence] should not be construed narrowly or technically, but should be construed in a sense to effectuate the settlement in one proceeding of controversies so closely connected as appropriately to be combined in one trial in order to prevent duplication of testimony, to avoid unnecessary expense to the parties and to the public, and to expedite the adjudication of suits.” National Lumber Co. v. Canton Inst. for Sav., 56 Mass.App.Ct. 186, 188 (2002), quoting Potier v. A.W. Perry, Inc., 286 Mass. 602, 608 (1934). In other words, “a transaction is where both causes of action proceed from the same wrong.” Potier, 286 Mass. at 608. Failure to plead a compulsory counterclaim bars a party from bringing a later independent action on that claim." Keystone Freight Corp. v. Bartlett Consol., Inc., 77 Mass.App.Ct. 304, 309-10 (2010).
Fader was required to file her G.L.c. 15 IB claims (Counts I-IV) with the MCAD prior to asserting any such claim with the Superior Court. See G.L.c. 15IB, §§5, 9; Everett v. 357 Corp., 453 Mass. 585, 599-600 (2009) (“without the predicate filing in MCAD, the Superior Court has no jurisdiction to entertain the claim of discrimination”). Fader answered the Yacht Club’s complaint in the prior action on August 31, 2011, and filed her complaint with the MCAD on April 12, 2012. The Superior Court lacked jurisdiction over Counts I-IV as of the date she filed her answer. See Mass.R.Civ.P. 13(a) (requiring assertion of counterclaims in responsive pleading which “the court has power to give which at the time of serving the pleading the pleader has against any opposing parly”).
Though Fader could have subsequently withdrawn her MCAD complaint and sought permission to amend her answer to assert Counts I-IV as counterclaims, nothing in the rules required that she do so. Mass.R.Civ.P. 13(e) (“A claim which either matured or was acquired by the pleader after serving his pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading” (emphasis added)); see G.L.c. 151B, §9 (procedure for with *371 drawal of claims from MCAD and filing in Superior Court). Furthermore, one of the main purposes of the statutory scheme is “to provide the MCAD with an opportunity to investigate and conciliate the claim of discrimination.” Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 531 (2001). Requiring a claimant to withdraw her administrative complaint would undermine this goal and prevent the MCAD from fulfilling its duties any time an employer sued an employee in this manner.
Fader’s malicious prosecution claim (Count VI) similarly was not required to be brought as a compulsory counterclaim. To prove a claim for malicious prosecution “a plaintiff must establish that he was damaged because the defendant commenced the original action without probable cause and with malice, and that the original action terminated in his favor.” Chervin v. Travelers Ins. Co., 448 Mass. 95, 103 (2006). Anecessary element of this claim is that the original action be terminated in favor of the claiming party. Id. Fader could not have alleged the facts necessary to support a malicious prosecution claim until after the prior action concluded in her favor.
Finally, Fader’s claim of abuse of process (Count V) does not arise from the same transaction or occurrence, as it does not “proceed from the same wrong” as the prior action. Potter, 286 Mass. at 608. The wrong at issue here is not whether Fader violated her employment contract or misappropriated a picture, but whether the Yacht Club used the legal process for an illegitimate purpose unrelated to its desire to recover damages. Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396, 407 (2002) (elements of abuse of process). Whether Fader actually breached her contract or inappropriately used a picture is ultimately irrelevant to this claim. Id. at 408, quoting Quaranto v. Silverman, 345 Mass. 423, 426 (1963) (“It is immaterial that the process was properly issued, that it was obtained in the course of proceedings which were brought with probable cause and for a proper purpose or even that the proceedings terminated in favor of the person instituting or initiating them”).
II. Anti-SLAPP Motion to Dismiss (Paper #8)
The Yacht Club also seeks dismissal of Fader’s claims for filing a retaliatory lawsuit, interfering with unemployment benefits, abuse of process and malicious prosecution (Counts III-VI respectively) pursuant to the so-called “Anü-SLAPP” statute. G.L.c. 231, §59H. In support of such a motion, a party must show that the claims against it are based solely on its petitioning activity, and have no other substantial basis. The burden then shifts to the nonmoving party to demonstrate that (1) the moving party’s exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law, and (2) the moving party’s acts caused actual injury. Id.; Cadle Co. v. Schlichtmann, 448 Mass. 242, 249 (2007).
The Yacht Club has not shown that Counts III-VI are based solely on its petitioning activities. Although the allegation of an ulterior motive behind the petitioning activity is insufficient to show some “other substantial basis,” see Office One, Inc. v. Lopez, 437 Mass. 113, 122 (2002), if there is some additional conduct that is evidence of the ulterior motive, then the moving party cannot meet its burden. Keystone Freight Corp. v. Bartlett Consolidated, Inc., 77 Mass.App.Ct. 304, 314 (2010). Such conduct may occur before or after the underlying petitioning activity. Id. at 315 n. 11.
Here, the pleadings and affidavits show that the events triggering this group of Fader’s claims, the prior action and the Yacht Club opposing Fader’s receipt of unemployment benefits, were indeed petitioning activities. G.L.c. 231, §59H (defining petitioning activity as a “written or oral statement made before or submitted to a legislative, executive, or judicial body”). The petitioning activities however, are not the only substantial bases for these claims. The Yacht Club engaged in other conduct evidencing an ulterior motive to prevent Fader from enforcing her legal rights and evidencing malice, including its repeated refusal to address allegations of sexual harassment; its attempts to bargain for and threaten to obtain a release of claims when terminating Fader; its threat to do anything necessary to acquire a release; the fact that it filed the prior action immediately after it terminated Fader; and its refusal to accept an offer to settle the prior action for the entire amount it sought in damage. These facts show that Counts III-VI of Fader’s complaint are perhaps in response to, but not solely based on the Yacht Club’s petitioning activity. See Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 168 n.20 (1998) (distinguishing between “based on” and “in response to”); compare Keystone Freight Corp., 77 Mass.App.Ct. at 316 (abuse of process claim not dismissed where filed in response to collection action but based on misconduct before and after collection attempt), and Bisognano v. Jain, 4 Mass. L. Rptr. 671, 13 (Mass.Super. Ct. 1995) (Roseman, J.) (abuse of process claim based on petitioning activity as well as other alleged conduct constituting essential elements of the claim, i.e. ulterior purpose and malice), with Wenger v. Aceto, 451 Mass. 1, 5-6 (2008) (Anti-SLAPP motion granted where verified complaint stated malicious prosecution and abuse of process claims arose from petitioning activity, and all other conduct alleged only pertained to c. 93A claim), and Mantell v. P&J. V. Mgmt. Corp., 31 Mass. L. Rptr. 521, 2-3 (2013) (Gaziano, J.) (Anti-SLAPP motion granted on abuse of process and malicious prosecution claims for failure of complaint to identify conduct evidencing ulterior motive).
ORDER
For the foregoing reasons, the Defendants’ Motion to Dismiss Counts I-VI of the Plaintiffs Original Complaint (Paper #5) is DENIED, and the Defendants’ Special Motion to Dismiss Counts III-VI of the Plaintiffs Original Complaint (Paper #8) is DENIED.