WAYNE J. ADAMS & another[1] *vs.* STEPHEN J. WHITMAN.[2]

No. 03-P-748.

Worcester. April 12, 2004. - February 3, 2005.

Present: GREENBERG, PORADA, & GREEN, JJ.

*Negligence,* Installation of septic system. *"Anti-SLAPP" Statute. Abuse of Process.*

In a civil action in which a defendant made a counterclaim for abuse of process, the trial judge erred in denying the plaintiffs' special motion to dismiss the counterclaim under G. L. c. 231, § 59H, the anti-SLAPP statute, where the counterclaim was solely based on the plaintiffs' petitioning activity of filing suit and had no other basis, and where the defendant failed to meet his burden of proving that the plaintiffs' exercise of their right to petition was devoid of any reasonable factual support or any arguable basis in law. [852-858]

CIVIL ACTION commenced in the Superior Court Department on September 25, 2001.

A special motion to dismiss was heard by *Ernest B. Murphy,* J.

*Robert H. D'Auria* for the plaintiffs.

GREENBERG, J. Both Whitman & Bingham Associates, Inc. (corporation), and its principal, Stephen Whitman, engineered a septic tank system for Wesley and Phyllis Price to be installed on their property in the town of Ashburnham. During that time the property was under a purchase and sale agreement to the plaintiffs, Wayne and Terri Adams. About three months after the property was conveyed to them, they detected foul odors emanating from the septic tank and observed extensive water

---

[1] Terri L. Adams.

[2] The legal action that resulted in the order we now review began with the Adamses' multi-count complaint against Wesley G. Price; Phyllis L. Price; Kevin Lashua; Bill's Sewer Service, Inc.; Whitman & Bingham Associates, Inc.; and Stephen Whitman.

runoff spilling onto local roadways. Additionally, the local board of health wrote the Adamses a letter indicating that the septic system was not in compliance with regulatory requirements. The Adamses contend in their resulting suit that the corporation negligently prepared the septic design plan and that Whitman himself was negligent in his preparation of the plan and failed to properly supervise those corporate employees who did the necessary engineering work.

In response to the claim against him as an individual, Whitman filed a counterclaim for abuse of process. In his unverified pleading, he alleged that he had acted solely within the scope of his employment for the corporation for which he was the principal and that the Adamses' claim was brought "wrongfully and maliciously . . . and [was] solely intended to injure and harass [him]."

The Adamses made a special motion to dismiss Whitman's counterclaim pursuant to G. L. c. 231, § 59H, the anti-SLAPP statute. They argued that since their lawsuit against Whitman was petitioning activity, it was entitled to the protection of § 59H. Wayne Adams filed two affidavits in support of the special motion, one of his own and one of Duncan Brown, an expert witness in engineering who concluded that Whitman was personally negligent in preparing and supervising implementation of the septic design plan. Whitman submitted only a memorandum in opposition to the special motion to dismiss. After a nonevidentiary hearing, a judge of the Superior Court denied the Adamses' special motion to dismiss. Despite concluding that Whitman's abuse of process claim was solely based on the Adamses' petitioning activities, he ruled that the anti-SLAPP statute did not apply here because the Adamses' claim against Whitman did not raise an issue of public concern. The judge, therefore, did not perform the rest of the analysis dictated by G. L. c. 231, § 59H. See *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. 156, 167-168 (1998) (*Duracraft*).

On appeal, the Adamses contend that the judge's reasoning was in error.[3] On that point, we agree. See *id.* at 164 (issue of public concern not a prerequisite for applying the anti-SLAPP

---

[3] We review the judge's order, even though interlocutory, because this case presents a situation similar to that in *Fabre* v. *Walton*, 436 Mass. 517, 521-522

statute); *McLarnon* v. *Jokisch*, 431 Mass. 343, 345-347 (2000) (again interpreting the anti-SLAPP statute to apply even where no issue of public concern was involved). We must therefore consider in our analysis whether and how the anti-SLAPP statute may apply to Whitman's abuse of process claim. We conclude that the Adamses made a showing that Whitman's abuse of process claim was based *solely* on their petitioning activity and so satisfied their burden at the first stage of the anti-SLAPP procedure. We also conclude that Whitman did not meet his burden of showing that the Adamses' petitioning activity (filing suit against him) was devoid of arguable legal basis or reasonable factual support.

*Analysis.* In the *Duracraft* case, *supra*, the Supreme Judicial Court first addressed the difficulties of faithfully serving both the letter and the spirit of the anti-SLAPP statute, the genesis of which lay in the protection of conservation-minded activist citizens from harassing lawsuits by unscrupulous real estate developers. 427 Mass. at 161. See *Kobrin* v. *Gastfriend*, 443 Mass. 327 (2005). By interpreting the reach of the statute to include litigants whose private interests were equally at stake, *Duracraft*, *supra* at 164, the court reserved for future resolution the potential conflicts between the statute and accepted common-law principles. See *McLarnon* v. *Jokisch*, 431 Mass. at 347 (malicious prosecution); *Office One, Inc.* v. *Lopez*, 437 Mass. 113, 123 (2002) (defamation). See also *Matter of the Discipline of an Attorney*, 442 Mass. 660, 673-674 & n.27 (2004) (bar discipline).

Under *Duracraft*, a two-step procedure applies generally to a special motion to dismiss a claim pursuant to § 59H. First, the special movant (the Adamses, in this case) must make a threshold showing through pleadings and affidavits that the claim is "based on" the special movant's protected petitioning

(2002), where the Supreme Judicial Court held that a special movant had the right to an interlocutory appeal from the denial of her special motion to dismiss. Contrast *Baker* v. *Hobson*, *ante* 659, 663 (2004), where the plaintiff sought interlocutory appeal of the denial of a special motion to dismiss a counterclaim against him but also faced other counterclaims that he had not moved to dismiss pursuant to the anti-SLAPP statute.

activities[4] alone and has no other "substantial basis." *Duracraft*, 427 Mass. at 167-168. If the special movant fails to make the required showing, the challenged claim survives. However, if the showing is made, the second step is reached, in which the nonmoving party (Whitman, in this case) may preserve its claim only through showing by a preponderance of the evidence,[5] based on the pleadings and affidavits, that the petitioning activity is "devoid of any reasonable factual support or any arguable basis in law," and that "the [special movant's] acts caused actual injury" to the nonmoving party. *Fabre* v. *Walton*, 436 Mass. 517, 520 (2002), quoting from G. L. c. 231, § 59H.

The instant case arises in the context of the common-law tort of abuse of process, which comprises the following elements: "(1) 'process' was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage." *Gutierrez* v. *Massachusetts Bay Transp. Authy.*, 437 Mass. 396, 407 (2002), *S.C.*, 442 Mass. 1041 (2004), quoting from *Datacomm Interface, Inc.* v. *Computerworld, Inc.*, 396 Mass. 760, 775-776 (1986). The tort has been described as usually involving a form of coercion to obtain collateral advantage not properly involved in the proceeding itself, similar to extortion. See *Powers* v. *Leno*, 24 Mass. App. Ct. 381, 383-384 (1987), and authorities cited. It is sometimes said that "[t]he subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed . . . ." *Kelley* v. *Stop & Shop Cos.*, 26 Mass. App. Ct. 557, 558 (1988), quoting from Restatement (Second) of Torts § 682 comment a (1977). It is immaterial to an abuse of process claim that the process was properly issued, that it was obtained in connection with a proceeding brought with probable cause, or that the proceeding terminated in favor of its proponent. *Gutierrez* v. *Massachusetts Bay Transp. Authy.*, *supra* at 408.

Thus, only the first test in the special motion protocol —

---

[4]As recently explained by the Supreme Judicial Court, "the right of petition protected in the anti-SLAPP statute is that right enumerated in the First Amendment to the United States Constitution . . . and in art. 19 of the Massachusetts Declaration of Rights . . . . The right of petition contemplated by the Legislature is thus one in which a party seeks some redress from the government." *Kobrin* v. *Gastfriend*, 443 Mass. at 333.

[5]See *Baker* v. *Parsons*, 434 Mass. 543, 553-554 (2001).

whether the claim is solely "based on" the petitioning activity — has the potential to preserve a meritorious abuse of process claim where the process was properly issued and based on probable cause. In such cases, the second step of the special motion analysis — focusing on whether the special movant's petitioning activity was "devoid of any reasonable factual support or any arguable basis in law" — would necessarily result in dismissal of the abuse of process claim. For this reason, our consideration of how the Adamses' special motion affects Whitman's abuse of process counterclaim focuses particularly on the first step.

The Supreme Judicial Court touched upon the relation between abuse of process and anti-SLAPP in *Fabre* v. *Walton*, 436 Mass. at 519 n.3, 522-524 & n.10. There, the court considered whether Fabre's abuse of process claim survived Walton's anti-SLAPP motion. Walton had obtained a protective order under G. L. c. 209A and Fabre alleged in his later abuse of process suit only that Walton obtained the c. 209A order for the "ulterior motive" of imposing on Fabre the necessity of explaining this record when applying for jobs in the future. *Id.* at 519, 523-524.

The *Fabre* court first noted the elements of an abuse of process claim, focusing on the description of the tort as involving a "subsequent misuse of the process." *Id.* at 519 n.3, quoting from *Kelley* v. *Stop & Shop Cos.*, 26 Mass. App. Ct. at 558. Then, discussing the first step of the special motion protocol, the court concluded that, notwithstanding Walton's alleged motive, Fabre's abuse of process claim was "based on" the c. 209A petition, and had no other "substantial basis," because there was no other "conduct" of Walton complained of by Fabre. *Id.* at 524.[6] In a footnote, the court explained that "Fabre does not claim that Walton made *subsequent use* of the 209A order to coerce or obtain a collateral advantage or for some other illegitimate purpose" (emphasis added). *Id.* at 524 n.10.

---

[6]In *Office One, Inc.* v. *Lopez*, 437 Mass. at 122, the court, relying on this same portion of *Fabre* in a case not involving an abuse of process claim, stated that "the motive behind the petitioning activity is irrelevant at this initial stage [of the special motion analysis]." The court explained that *Fabre* required conduct on the part of the special movant, beyond the petitioning activity, for the nonmovant to succeed on the first anti-SLAPP step. *Id.*

Thus, at the first stage of the special motion analysis, the key to survival of a party's abuse of process claim seems to be whether the party relies on some other *conduct* by the special movant, apart from merely obtaining the process, that amounted to an affirmative, *subsequent misuse* of the process to further the special movant's alleged ulterior purpose.

At first blush, one *might* then conclude that there is no doctrinal conflict between anti-SLAPP and abuse of process, if one is of the view that no cause of action for abuse of process is sustainable without the alleged subsequent conduct. That view finds some support in case law aside from the authorities mentioned above — perhaps most notably in dictum in *Cohen* v. *Hurley*, 20 Mass. App. Ct. 439, 442 (1985), which quotes Dean Prosser's comment in Prosser & Keeton, Torts § 121, at 898 (1984), that "[t]here is no liability [for abuse of process] where the defendant has done nothing more than carry out the process to its authorized conclusion, even with bad intentions."[7] There is considerable modern disagreement with Prosser's view, however, that an additional act is always required to make out the tort. See Harper, James & Gray, Torts § 4.9, at 4:90-4:91 & n.21 (3d ed. 1996); Dobbs, Torts § 438, at 1239-1240 (2000).[8] These commentators make the point that an illegitimate purpose can often be achieved without any further act beyond the obtaining of the process.

Although our cases are not uniform in this respect, some support this point of view. Without turning on any additional act of misuse, a number of cases find that initiating process alone can at times be so coercive and promoting of ulterior advantage that it supports an abuse of process claim. See *Malone* v. *Belcher*, 216 Mass. 209, 210-211 (1913) (allowing an abuse of process claim where an "attachment was made for the ostensible

---

[7] In our view the statement is dictum in regard to the additional act requirement; the abuse of process claim in *Cohen* was faulty because no ulterior motive was involved. See *Cohen* v. *Hurley*, 20 Mass. App. Ct. at 442.

[8] Although Prosser & Keeton, Torts § 121, at 898 n.14 (1984), cites *Elliott* v. *Warwick Stores, Inc.*, 329 Mass. 406 (1952), for the proposition that Massachusetts requires an additional act, the failure of the abuse of process claim in that case seems to turn on the lack of ulterior motive rather than the need for additional conduct. See *id.* at 408-409. See also Harper, James & Gray, Torts § 4.9, at 4:91 n.21 (3d ed. 1996).

purpose of collecting a commission," but a jury could find that the real object was to prevent the conveyance of the property to another and to secure it for the party suing for the commission); *Reardon* v. *Sadd*, 262 Mass. 345 (1928) (recognizing an abuse of process claim for an attachment that a jury could find was intended to coerce a factory owner to settle a claim against her on a debt that the claimant knew was incurred by a different party); *Jacoby* v. *Spector*, 292 Mass. 366, 369 (1935) (allowing an abuse of process claim where a furniture company's repeated wage attachments exerted coercion on a consumer to sign a wage assignment contract to pay for furniture he attempted to refuse delivery of); *Carroll* v. *Gillespie*, 14 Mass. App. Ct. 12, 26 (1982) (sustaining an abuse of process claim where a car repair shop owner swore out a criminal fraud and forgery complaint against a customer for the purpose of pressuring her to pay a repair bill owed him); *American Velodur Metal, Inc.* v. *Schinabeck*, 20 Mass. App. Ct. 460, 462, 469-470 (1985), cert. denied, 475 U.S. 1018 (1986) (evidence supported elements of an abuse of process claim where a lawsuit for possession of a house, filed by a corporation controlled by a husband, necessarily exerted pressure on his wife to settle her divorce proceedings on terms more favorable to the husband).

Consequently, we may conclude that our decisions are not particularly clear on the question of what constitutes "misuse" of process. It is true, however, that the cases support the idea that initiating process can simultaneously constitute abuse of that process in certain circumstances.

We read *Fabre* v. *Walton*, then, as a case where the court's focus on whether the plaintiff complained of any conduct other than the defendant's request for a protective order was a justifiable means of illustrating that the sole basis of the suit was the defendant's petitioning activity.[9] Placed in the continuum of cases outlined above, the circumstances in *Fabre* were not such

[9]Such an approach has the important advantage of not effectively abolishing a subcategory of the tort of abuse of process. As discussed, Massachusetts courts have long allowed abuse of process claims in some circumstances where the only conduct complained of was the initiation of process. Since an abuse of process claim can be made out in a situation where the process was validly obtained on probable cause, such a claim would surely be dismissed were it subjected to the anti-SLAPP statute's second-stage requirement that

that the initiation of process alone could support an abuse of process claim. The court thus noted that there was no other conduct complained of, in order to rule out the possibility that there was some nonpetitioning basis for the claim.[10]

Similarly, the instant case does not involve facts where the Adamses' negligence claim alone could provide the legal basis for a trier of fact to sustain an abuse of process claim. Therefore, we conclude that the abuse of process claim that Whitman filed in response was solely "based on" the Adamses' petitioning activity of filing suit and had no other basis (such as actionable misuse of that process). The case would be different if the Adamses' negligence claim alone provided viable grounds for an abuse of process claim.

Since the threshold requirement for application of the anti-SLAPP statute is met, the burden shifts to Whitman to show that "(1) the moving party's exercise of its right to petition was

---

the claimant show the petitioning activity to be "devoid of any reasonable factual support or any arguable basis in law." The *Duracraft* court construed the statute as it did, in part, to avoid the problem that the "the statute on its face alters procedural and substantive law in a sweeping way," at least beyond the mischief the Legislature intended to reach and beyond any intent the Legislature manifested to change laws. *Duracraft*, 427 Mass. at 167. This approach is consistent with the settled rule of statutory construction that "[a] statute is not to be interpreted as effecting a material change in or a repeal of the common law unless the intent to do so is clearly expressed." *Queler* v. *Skowron*, 438 Mass. 304, 312 (2002), quoting from *Pineo* v. *White*, 320 Mass. 487, 491 (1946).

[10]The Supreme Judicial Court refused to apply the anti-SLAPP statute in a recent anti-SLAPP decision despite the fact that the only conduct complained of in that case was assumed to be petitioning activity. *Matter of the Discipline of an Attorney*, 442 Mass. 660 (2004), involved a disciplinary proceeding against a lawyer who sent a fire marshal a deposition transcript tending to show that one of the investigators working for the fire marshal was incompetent. Bar counsel alleged, inter alia, that the lawyer unethically sent the information in order to influence the testimony of the fire investigator in a pending case. *Id.* at 664-665. Claiming that his conduct was petitioning activity intended to protect the public and his client's future interest, the lawyer moved to dismiss the proceeding under the anti-SLAPP statute. *Id.* at 673-674. Despite accepting that "[t]he only conduct ever challenged by bar counsel is the [lawyer's] sending of the deposition transcript," *id.* at 664, which it assumed was petitioning activity, the court refused to apply the anti-SLAPP statute. *Id.* at 673-674. "[T]he less than careful means of communication employed by the [lawyer]," the court observed, "left his conduct at least open to the interpretation urged by bar counsel, and bar counsel thus had a 'substantial basis' for bringing disciplinary action." *Id.* at 674.

devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party." G. L. c. 231, § 59H. Although the trial court did not perform this portion of the anti-SLAPP analysis, we reach it on appeal since only one conclusion is possible on this record. As mentioned previously, Whitman was required to meet a preponderance of evidence standard in his showings. See *Baker* v. *Parsons*, 434 Mass. 543, 553-554 (2001).

Whitman could not have met his burden through his filings. In his initial answer and counterclaim to the negligence suit, and in his memorandum in opposition to the special motion, he stated only that that the negligence claim was brought to "injure and harass" him, that he acted solely as an employee of the corporation, that the Adamses's expert was motivated by personal bias, and that "the Plaintiffs' expert has misinterpreted the applicable code relating to this matter and any opinion will be duly refuted." These allegations were not submitted in a verified pleading or affidavit and are merely conclusory. We need not reach the "injury" showing of step two, because of our conclusion that these allegations could not meet Whitman's burden of showing by a preponderance of the evidence that the Adamses' suit was devoid of any reasonable factual support or arguable legal basis.[11] Therefore, we determine that the Adamses are entitled to allowance of their special motion to dismiss the abuse of process counterclaim.

The order denying the special motion is reversed, and the case is remanded for entry of a new order consistent with this opinion and including an award of reasonable attorney's fees and costs pursuant to G. L. c. 231, § 59H. Within fifteen days of issuance of the rescript in this matter, the Adamses may also apply to the panel who decided this appeal for an award of appellate attorney's fees and costs, as discussed in *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004).

*So ordered.*

---

[11]Our decision deals only with the pleadings and affidavits placed on the record for the anti-SLAPP motion. It does not indicate anything as to the likelihood of success of the Adamses' underlying negligence claim.