Agnes, Peter W., J.

I. Introduction

The Carriage Hill Condominium complex in Southborough, Massachusetts consists of 25 buildings comprising 62 units of residential housing intended for seniors. The trustees of the Carriage Hill Condominium Trust (plaintiffs) have brought this civil action to recover money damages against the condominium project’s developer and the initial trustee of the condominium trust,[3] a Massachusetts limited liability corporation known as Carriage Hill, LLC (defendant Carriage Hill) and two individuals (defendants Heim and Zarella) who allegedly are the principals of Carriage Hill and who allegedly acted as trustees during the development phase of the project and prior *30 to the time when authority was turned over to the unit owners who elected their own trustees. The plaintiffs allege that defendants Carriage Hill, Heim and Zarella were negligent and breached their contract with the condominium association (made up, of course, of the individuals who purchased condominium units) by not properly constructing the units and are responsible for several millions of dollars of repairs that must be made in the roofs, walls and windows of individual condominium units. The plaintiffs also joined as a defendant another Massachusetts limited liability corporation, defendant R&R, LLC, (defendant R&R) which is allegedly controlled by the wives of defendants Heim and Zarella. Plaintiffs allege that on October 22, 2004, before suit was filed by the plaintiffs, defendant Carriage Hill sold its two remaining units in the condominium development in question to defendant R&R, and that R&R was in the process of transferring the units to third parties.
The matter before the court is the special motion to dismiss filed by the plaintiffs and based on the Massachusetts anti-SLAPP statute, G.L.c. 231, §59H.

II. Background

This lawsuit was filed on May 25, 2005. It consists of six counts as follows: count 1 (negligence against Carriage Hill); count 2 (Breach of fiduciary duty against Carriage Hill); count 3 (Breach of implied warranty against Carriage Hill); count 4 (Breach of fiduciaiy duty as to Heim and Zarella); count 5 (Fraudulent transfer as to Carriage Hill involving the transfer of 2 units to R&R); and count 6 (Injunctive relief against R&R to prohibit the transfer of the 2 units in question). Plaintiffs also sought an attachment and a preliminary injunction against Carriage Hill and R&R to prevent any additional transfers of ownership of units in the condominium complex in question. The defendants responded with affidavits indicating that Carriage Hill was not insolvent and actually owned additional condominium units other than the two transferred to R&R, and furthermore, that the transfer of units from Carriage Hill to R&R was appropriate because the wives of both Heim and Zarella had provided investment capital to defendant Carriage Hill which made it possible for Carriage Hill to undertake the condominium project and thus that defendant Carriage Hill owed money to the wives of defendants Heim and Zarella. Following a hearing on the plaintiff s request for prejudgment security, and on the basis of affidavits submitted by both sides, the court (Fecteau, J.) allowed an attachment in the amount of $300,000 against defendant Carriage Hill only and denied relief against defendant R&R.
Thereafter, on or about June 28, 2005 the defendants filed an answer with counterclaims. The defendants’ counterclaims consist of a count for intentional interference with contractual relations (based on a claim that the lawsuit and request for prejudgment security interfered with a relationship between R&R and a prospective buyer of a condominium unit), and a count for abuse of process (based on a claim that the plaintiffs’ lawsuit was based on bad faith, was in retaliation for another lawsuit between one of the individual plaintiff trustees and defendant Carriage Hill, and is frivolous).

III. Discussion A

It is appropriate to begin with the language of the anti-SLAPP statute. G.L.c. 231, §59H provides, in pertinent part as follows:
In any case in which a party asserts that the civil claims . . . against said party are based on said party’s exercise of its rights of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss . . . The court shall grant such special motion, unless the party against whom such special motion is made shows that: (1) the moving party’s exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party’s acts caused actual injury to the responding party. In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating facts upon which the liability or defense is based.
The Supreme Judicial Court considered the legislative history and purpose of the anti-SLAPP law, in Duracraft Corporation v. Holmes Products Corporation, 427 Mass. 156 (1998). In Duracrqft, the court explained that “(t]he typical mischief that the legislation intended to remedy was lawsuits directed at individual citizens of modest means for speaking publically against development projects.” Id. at 161. SLAPP actions, the court stated, are “meritless suits"; “ ‘[t]he objective of SLAPP suits is not to win them, but to use litigation to intimidate opponents’ exercise of rights of petitioning and speech.” Duracraft, supra, at 161, citing Wilcox v. Superior Court, 27 Cal.App.4th 809, 816-17 (1994).
In reviewing the Massachusetts law, the Duracrqft court acknowledged that the statute provided “very broad protection for petitioning activities,” id. at 162, but that the Legislature did not intend to create an absolute privilege for petitioning activities. Id. at 162-63. As the Duracrqft court put it, “(w]e also see no evidence that the statute was intended to reach suits such as this one between two corporate competitors involved in other ongoing litigation, where the special motion may have been deployed not to limit ‘strategic litigation,’ but as an additional litigation tactic.” Id. at 163. The problem faced by the Court in Duracrqft, however, was that the Legislature omitted to include any boundaries on the scope of the anti-SLAPP statute’s reach. “By protecting one party’s exercise of its right of petition, unless it can be shown to be sham petitioning, the statute impinges on the adverse party’s exercise of its right to petition, even when it is *31 not engaging in sham petitioning.” Duracraft, supra, 427 Mass. at 166. For this reason, the court resorted to the settled approach to statutory construction whereby an interpretation is preferred which avoids a conclusion that a law is unconstitutional and which retains “as much of the legislative intent as is possible in a fair application of constitutional principles.” Id. at 167. See also id. at 163 n.l 1 (enactment of G.L.c. 231, §59H does not preclude the court from interpreting the law to insure that it is “applied only to SLAPP’s and not to suits arising in wholly different circumstances”).
With regard to the burden on the moving party to show that “the civil claims . . . against said pariy are based on said party’s exercise of its rights of petition under the constitution of the United States or of the commonwealth,” G.L.c. 231, §59H, the Duracraft court decided to “adopt a construction of ‘based on’ that would exclude motions brought against meritorious claims with a substantial basis other than or in addition to the petitioning activities implicated.” Id. at 167. Under this approach, when, as in this case, the moving party is the plaintiff, it is not immunized from counterclaims simply because they are filed “in response” to the moving party’s claim, but rather it must demonstrate that the counterclaims “have no substantial basis other than or in addition to the petitioning activities.” Id. at 167-68 & n.20.
The court accomplished this task by first declaring that the party filing the special motion to dismiss must, in accordance with the terms of G.L.c. 231, §59H, first paragraph, make “a threshold showing through the pleadings and affidavits that the claims against him are ‘based on’ the petitioning activities alone and have no substantive basis other than or in addition to the petitioning activities.” Duracraft, supra, 427 Mass. at 167-68.[4] If this showing is not made by the moving pariy, the opposing party’s claim survives. If this initial burden is met by the moving party, it then becomes the burden of the opposing party to establish by a preponderance of the evidence, based on the pleadings and affidavits, that the petitioning activity is “devoid of any reasonable factual support or any arguable basis in law,” and that “the [moving party’s] acts caused actual injury” to the nonmoving party. Fabre v. Walton, 436 Mass. 517, 520 (2002), quoting from G.L.c. 231, §59H.
B
In McLarnon v. Jokisch, 431 Mass. 343 (2000), the Supreme Judicial Court applied the anti-SLAPP statute, as interpreted in Duracraft, supra, to uphold the decision of a trial judge who had dismissed the plaintiffs claims for malicious prosecution and civil rights violations in response to a special motion to dismiss by the defendants under G.L.c. 231, §59H. In McLarnon, one of the defendants had obtained a G.L.c. 209A restraining order against her ex-husband, the plaintiff in the later suit at issue. Thereafter, the plaintiff brought a civil action against his ex-wife and her new husband alleging malicious prosecution, civil rights violations and other claims based on assertions that his ex-wife had lied and falsified allegations of physical abuse in obtaining the G.L.c. 209A protective order. The Supreme Judicial Court concluded that the defendants (ex-wife and new husband) established that the plaintiffs claims were based on their petitioning activity alone and not on any other basis, and then, under the second part of the G.L.c. 231, §59H test that the plaintiff had failed to cany his burden of demonstrating that there was no factual or legal support for the defendants’ petitioning activity (obtaining the G.L.c. 209A order). Accordingly, the Court upheld the order of dismissal. See McLarnon, supra, 431 Mass. at 344-45, 348-49.
There are two important considerations about the decision in McLarnon that must be assessed in determining whether it controls the outcome in this case. First, the Supreme Judicial Court specifically stated that the anti-SLAPP statute cannot be applied in such a way as to effectively abolish all claims for malicious prosecution (whether they are brought by a plaintiff or a plaintiff in counterclaim). Id. at 345-46, 347. Second, the two-part test developed by the court in Duracraft, supra, for evaluating special motions to dismiss under the anti-SLAPP statute cannot be applied in such a way that the non-moving pariy is effectively deprived of an opportuniiy to preserve its claim. McLarnon, supra 431 Mass. at 347.
The question presented in this case is how should the court reconcile the holding in McLarnon that the claim for malicious prosecution should be dismissed under the anti-SLAPP statute, with dicta to the effect that not all claims for abuse of process or malicious prosecution are effectively abolished by the anti-SLAPP statute and that it is necessary to apply the anti-SLAPP statute in a manner that enables the non-moving pariy to preserve its claims to the extent it would if it faced a motion to dismiss under Mass.RCiv.P. 12(b)(6).
C
The answer to this question is provided by the decision in Adams v. Whitman, 62 Mass.App.Ct. 850 (2005), where Justice Greenberg, writing for a panel of the Appeals Court, offers a very helpful analysis of how to apply G.L.c. 231, §59H to a situation such as the one involved in the present case. In Adams the moving pariy was a homeowner who brought a civil action for damages against a corporation and its principal in his individual capacity based on the installation of an allegedly defective septic system. The plaintiff homeowner urged the dismissal of a counterclaim by the individual defendant for abuse of process.
In Adams, the Appeals Court discussed the various ways in which a pariy may establish the tort of abuse of process. It observed that when an abuse of process claim is based solely on another party’s claim for negligence on the theory that the negligence claim is actually brought to achieve an ulterior motive and not *32 on the basis of any other independent conduct, even though the negligence claim is not entirely lacking in merit, the abuse of process counterclaim should survive a special motion to dismiss under the anti-SLAFP statute. See Adams, supra, 62 Mass.App.Ct. at 856-57p.[5] (distinguishing Fabre in the sense that in that case the abuse of process claim was not of the type that by definition rested entirely on the petitioning party’s action in bringing a suit).
As it turned out in Adams, the Appeals Court upheld the dismissal of the counterclaims under the anti-SLAPP statute.
[T]he instant case does not involve facts where the Adamses’ negligence claim alone could provide the legal basis for a trier of fact to sustain an abuse of process claim. Therefore, we conclude that the abuse of process claim that Whitman filed in response was solely “based on” the Adamses’ petitioning activiiy of filing suit and had no other basis (such as actionable misuse of that process). The case would be different if the Adamses’ negligence claim alone provided viable grounds for an abuse of process claim.
Adams, supra, 62 Mass.App.Ct at 857.
D
In the present case, the defendants maintain that the sole purpose of bringing the G.L.c. 231, §59H motion to dismiss was to prevent defendant R&R from conveying one or more of its units to a bona fide purchaser for value in order to insure the availability of funds in its claims against defendant Carriage Hill. Defendant’s Opposition at 2. In support of this view, defendants filed affidavits that state that statements relied upon by the plaintiffs in seeking prejudgment security against R&R are false. In particular, the defendants maintain that after defendant Carriage Hill conveyed two condominium units to R&R, it retained ownership of five additional units and the gross value of these five units is in excess of three million dollars with a total net value in excess of 2 million dollars. This critical fact is not disputed further by the plaintiffs. The defendants also point out that the plaintiffs papers in connection with this motion repeat errors of fact. For example, defendants point out that counsel for the plaintiffs has conceded that no cause of action lies against defendants Heim and Zarella in their individual capacities and that plaintiffs knew or should have known that defendant Carriage Hill had conveyed its remaining units out to third parties (including the two units conveyed to R&R) at least five months before this suit was filed. Thus, defendants maintain that “the sole purpose of the Plaintiffs complaint was to obtain funds from the sale by R&R, LLC, a separate entity. ” Defendants’ Opposition at 8-9.
In addition, defendants point out that the counterclaims that plaintiffs seek to dismiss under the antiSLAPP statute are exclusively those filed by R&R and not defendant Carriage Hill, the principal party with whom the plaintiffs are in dispute.
In conclusion, because this is a case in which the defendant’s counterclaim for abuse of process is of the variety that is based entirely on the initiation of process, see Adams, supra, 62 Mass.App.Ct. 856, and the application of the anti-SLAPP statute to such a claim would lead to its dismissal in circumstances that the Supreme Judicial Court in McLarnon noted would be in excess of the statute’s proper reach, the special motion to dismiss the counterclaims must be denied.[6]

Conclusion

For the above reasons, the plaintiffs special motion to dismiss is DENIED.

 Plaintiffs also allege that Carriage Hill retained at least 2 units after plaintiffs assumed their position as trustees and thus was a unit owner after it ceased to be the trustee.

 In this case, the defendants maintain that the lawsuit filed by the plaintiffs should not be regarded as “petitioning activity” within the meaning of G.L.c. 231, §59H. The Massachusetts law, unlike the anti-SLAPP laws of every other jurisdiction, is not limited to suits involving public disputes, and applies to conduct between private parties such as the trustees and corporate and individual defendants involved in this case. See McLarnon v. Jokisch, 431 Mass. 343, 345-47 (2000) (the anti-SLAPP statute applies to cases where no issue of public concern is involved).

 In Adams, supra, 62 Mass. App.Ct. at 855-56, the Appeal Court offered several illustralions of Massachusetts precedents sustaining the viability of abuse of process claims grounded in an allegation that the opposing party had acted for an ulterior motive even though it may have had a meritorious claim. See Malone v. Belcher, 216 Mass. 209, 210-11 (1913) (allowing an abuse of process claim where an “attachment was made for the ostensible purpose of collecting a commission,” but a jury could find that the real object was to prevent the conveyance of the property to another and to secure it for the party suing for the commission); Reardon v. Sadd, 262 Mass. 345 (1928) (recognizing an abuse of process claim for an attachment that a jury could find was intended to coerce a factory owner to settle a claim against her on a debt that the claimant knew was incurred by a different party); Jacoby v. Spector, 292 Mass. 366, 369 (1935) (allowing an abuse of process claim where a furniture company’s repeated wage attachments exerted coercion on a consumer to sign a wage assignment contract to pay for furniture he attempted to refuse delivery of); Carroll v. Gillespie, 14 Mass.App.Ct. 12, 26 (1982) (sustaining an abuse of process claim where a car repair shop owner swore out a criminal fraud and forgery complaint against a customer for the purpose of pressuring her to pay a repair bill owed him); American Velodur Metal, Inc. v. Schinabeck, 20 Mass.App.Ct, 460, 462, 469-70 (1985), cert. denied, 475 U.S. 1018 (1986) (evidence supported elements of an abuse of process claim where a lawsuit for possession of a house, filed by a corporation controlled by a husband, necessarily exerted pressure on his wife to settle her divorce proceedings on terms more favorable to the husband).

 The same reasoning applies to the defendant R&R’s counterclaim for Interference with Contactual Relations.