Gaziano, Frank M., J.
The plaintiffs, Annemarie Mantell and Nicole Brown, allege sexual harassment and discrimination against P&J.V. Management Coip., Michael DiBona, and Scott Viscariello,[3] the defendants and plaintiffs-in-counterclaim. The defendants’ counterclaims allege malicious prosecution, abuse of process, and conspiracy. Brown and Mantell now move to dismiss the counterclaims pursuant to the anti-SLAPP Act, G.L.c. 231, §59H.
BACKGROUND
The following background is taken from the pleadings and supporting and opposing affidavits. Fabre v. Walton, 436 Mass. 517, 524 (2002). On January 13, 2012, Mantell filed a complaint with the Massachusetts Commission Against Discrimination (“MCAD”) against the defendants alleging incidents of sexual harassment, sex discrimination, and a hostile work environment caused by Michael DiBona, the general manager at Mamma Mia’s restaurant where Mantell and Brown worked. The incidents included DiBona exposing himself to Mantell, touching her inappropriately, and making explicit remarks. Mantell also alleges that various other employees sexually harassed her and on one occasion, took a photograph of her four-year-old son with no pants on. Prior to filing the MCAD complaint, Mantell informed other managers about DiBona’s behavior, including Sara Gannon and Ms. Gannon’s replacement, Amy Furtado. Mantell filed a complaint with P&J.V. about an incident of sexual harassment by DiBona on December 30, 2011. On January 2, 2012, Debi Cherry of the Human Resources department spoke to Brown, who told her about an incident where DiBona exposed himself to Brown and another employee. Earlier that day, Brown had resigned from her position, citing personal reasons. Following Mantell’s MCAD complaint, the behavior towards her worsened. Mantell retained Attorney Lisa Carlson, who negotiated with the defendants to reach an agreement to settle. Attorney Carlson emailed a list of terms to be included in the settlement agreement to the defendants, who agreed to each term individually and asked Attorney Carlson for a draft agreement in the return email.
On March 5, 2012, Brown retained Attorney Carlson to represent her with regard to her allegations of sexual harassment, sexual discrimination, and a hostile work environment against P&J.V. and DiBona. Brown did not report the incidents to her managers, Furtado approached her to apologize for DiBona’s behavior following at least one incident after other employees complained. Attorney Carlson informed the defendants that Brown and Mantell would be supporting each other and she expected Mantell to be a witness for Brown in the event that the parties could not reach a settlement. Upon learning of Brown's complaints and cooperation with Mantell, the defendants refused to sign the settlement agreement. Man-tell had resigned from her position on February 28, 2012, but signed the settlement as drafted by Attorney Carlson in conformity with the email exchange on March 2, and faxed it to the defendants following the March 5 conversation. On March 16, 2012, Brown complained to the Carver Police Department and to the Plymouth County District Attorney’s Office regarding *522 DiBona’s behavior. On March 20, 2012, Brown filed her MCAD complaint stemming from the sex discrimination and sexual harassment by DiBona.
Several other employees filed discrimination complaints with MCAD between April and May 2009, alleging ongoing sexual harassment and inappropriate touching. In reference to those complaints, Mantell signed an affidavit denying witnessing any sexual harassment and endorsing DiBona as a manager.
Mantell withdrew her MCAD complaint on April 12, 2012 and filed her complaint in this court on April 30, 2012, complaining of sexual harassment, discrimination, and retaliation, as well as contract claims arising out of the defendants’ refusal to sign the settlement agreement. On January 18, 2013, Brown filed her complaint in this court. The defendants responded with counterclaims of abuse of process, malicious prosecution, and conspiracy against both plaintiffs.
ANALYSIS
The legislation commonly known as the anti-SLAPP Act, G.L.c. 231, §59H, provides protection against civil claims, counterclaims, and cross claims based on the exercise of the right of petition. Upon the movant’s showing that the counterclaim is based only on the movant’s petitioning activity, the burden shifts to the non-moving parly to show by a preponderance of the evidence that the petition was devoid of factual support or arguable basis in the law. Baker v. Parsons, 434 Mass. 543, 553-54 (2001) (must show that no reasonable person could conclude that there was a basis in law for petitioning activity). To survive a special motion to dismiss, the non-moving party must also show that he or she was injured by the false petition. Benoit v. Fredrickson, 454 Mass. 148, 152-53 (2009).
I. Counterclaims against Nicole Brown
Brown’s complaints to MCAD and this court regarding sexual discrimination and harassment are protected petitioning activity. See Kobrin v. Gasffiend, 443 Mass. 327, 333 (2005) (“right of petition contemplated by the Legislature is thus one in which a party seeks some redress from the government”). The motivation behind the petitioning activity is irrelevant at the first stage of the analysis. Office One, Inc., v. Lopez, 437 Mass. 113, 122 (2002). The focus is entirely on the conduct complained of by the non-moving party and whether there is a substantial basis for the claim outside of the petitioning conduct. Duracrqft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 167-68 (1998).
The first counterclaim raised against Brown is conspiracy. The defendants assert the theory of civil conspiracy requiring a showing that the plaintiffs “acted in unison and possessed some peculiar power of coercion that they would not have had if they had been acting independently.” Neustadt u. Employers’ Liab. Assur. Corp., 303 Mass. 231, 325 (1939). The defendants argue that Brown is working in collusion with Mantell to obtain money from the defendants, alleging that Brown “conspired with other employees of P&J.V. to accomplish an unlawful purchase [sic], and/or a purpose by unlawful means causing damage” to them. The defendants claim that there is an inference of a conspiracy because the claims are baseless and unsubstantiated by anyone other than the plaintiffs, and Brown did not file a formal complaint with the defendants.
The plaintiffs’ corroboration of each others’ stories and mutual support is sufficiently tied to the petitioning activity so as to be inseparable. See Wynne v. Creigle, 63 Mass.App.Ct. 246, 254 (2005) (statements to media sufficiently tied to and in advancement of petition and fall “within the ambit of statements made in connection with legislative proceedings within the meaning of G.L.c. 231, §59H”). The allegation of a conspiracy is not enough to maintain the counterclaim because there is no activity outside of the petition to which the defendants point that would support a conspiracy. See Keystone Freight Corp. v. Bartlett Consolidated, Inc., 77 Mass.App.Ct. 304, 314 (2010) (“allegations of an ulterior motive unsupported by conduct independent of the petitioning activity are irrelevant to the first stage analysis”). There is no indication that Brown is collaborating with Mantell for any reason other than to seek redress from the court on her claims arising from the sexual harassment and discrimination. This corroboration, on its own, is not an action indicative of a conspiracy. This counterclaim is based only on Brown’s petitioning activity.
The defendants also counterclaim for abuse of process. The elements of abuse of process are “(1) ‘process’ was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage.” Vittands v. Sudduth, 49 Mass.App.Ct. 401, 406 (2000). Instead of a bright-line rule, the determination of whether the petitioning activity alone is sufficient to support an abuse of process claim is made on a case by case basis. Adams v. Whitman, 62 Mass.App.Ct. 850, 855 (2005) (“Initiating process alone can at times be so coercive and promoting of ulterior advantage that it supports an abuse of process claim”).
Here, the defendants allege no conduct outside of Brown’s complaint that implies an ulterior motive and only allege that Brown has “instituted civil proceedings knowing that the claims advanced . . . were not true and knowing that the claims advanced were frivolous.” Nothing in the counterclaim or pleadings shows that Brown is using her complaint to achieve any objective other than to obtain relief to which she is entitled for causes of action arising out of sex discrimination and sexual harassment in the workplace. See Keystone Freight Corp. v. Bartlett Consolidated, Inc., 77 Mass.App.Ct. at 314 (2010) (“allegations of an ulterior motive unsupported by conduct independent of the petitioning activity are irrelevant to the first stage analysis”); Vittands, 49 *523 Mass.App.Ct. at 406 (“ulterior motive may be shown by showing a direct demand for collateral advantage; or it may be inferred from what is said or done about the process”). The abuse of process counterclaim against Brown is based solely on her petitioning activity, which, in this case, is not enough to support the claim. See Adams, 62 Mass.App.Ct. at 856-57 (contractor’s abuse of process counterclaim dismissed under anti-SLAPP because based only on plaintiffs negligence claim for improperly installed septic system and no activity showing ulterior motive for negligence claim). Cf. American Velodur Metal, Inc. v. Schinabeck, 20 Mass.App.Ct. 460, 469-70, rev. den., 396 Mass. 1101 (1985), cert, den., 106 S.Ct. 1204 (1986) (abuse of process survived special motion to dismiss where husband in a divorce action had his company file for possession of home to force wife to settle on terms more favorable to husband). Therefore, Brown has shown that this counterclaim is based only on her petitioning activity.
The next counterclaim asserted by DiBona and P&J.V. against Brown is malicious prosecution. Malicious prosecution is an “interference with the right to be free from unjustifiable litigation.” Chervin v. Travelers Ins. Co., 448 Mass. 95, 102 (2006); Foley v. Polaroid Corp., 381 Mass. 545, 552 (1980). Like an abuse of process claim, a party can survive a special motion to dismiss with a showing that actions in addition to the petitioning acüvily support a malicious prosecution claim. Here, the counterclaim alleges that Brown’s claims are “false, groundless, and constitute malicious prosecution,” but does not provide any additional action by Brown that would indicate that her claims are false. The defendants’ argument that Brown may have another motive for the petition to this court is not sufficient to support the counterclaim without any other activity suggesting malicious prosecution. See McLamon v. Jockish, 431 Mass. 343, 349 (2000) (malicious prosecution claim alleging defendant lied in getting 209A restraining order dismissed under anti-SLAPP because based only on defendant’s petitioning activity). As there is no independent action or circumstances described in the counterclaim or pleadings that would indicate that Brown’s claims are baseless, Brown has met her burden on this count as well. See Wegner, 451 Mass. 1, 5 (plaintiff attorney sought to recover unpaid bill from defendant client in superior court days after client filed a malpractice claim against attorney; anti-SLAPP motion denied because client did owe plaintiff outstanding bill and attorney entitled to seek recovery).
The burden then shifts to the defendants to show that Brown’s petitioning activities are devoid of any factual support or an arguable basis in the law. Wen-ger, 451 Mass, at 7. The defendants have failed to meet this burden. Brown’s complaints of persistent sexual harassment and discrimination by DiBona with no action taken by P&J.V. are substantiated by Mantell. At least one manager, Furtado, was aware of at least one instance of DiBona’s actions. The defendants argue that Brown did not take the opportunity to disclose her complaints to Human Resources when she spoke to Ms. Cherry on January 2, 2012. However, the record of that conversation, which is attached to the defendants’ opposition, reveals that Brown did tell Ms. Cherry of one specific incident and said that she has seen “some stuff’ that could be called inappropriate. Brown’s allegations are also supported by the 2009 MCAD complaints of several other employees about similar conduct by the defendants. The dismissal of those complaints and Mantell’s affidavit supporting DiBona in those 2009 allegations go to the credibility of Mantell and the strength of Brown’s case. It is of no consequence that the 2009 complaints were dismissed because the “critical determination is not whether the petitioning activity in question will be successful, but whether it contains any reasonable factual or legal merit at all.” Id. (original complaint denied by magistrate for lack of probable cause, not dispositive in factual basis prong of anti-SLAPP). Brown’s petitioning activity has a reasonable basis in fact; therefore, the defendants have failed to meet their burden.
Because Brown has succeeded in showing that the counterclaims against her are based only on her petitioning activity and the defendants have failed to show that the petitioning activity has no factual support or basis in law, the motion to dismiss the counterclaims against Brown must be allowed.
II. Counterclaims against Annemarie Mantell
With respect to Mantell, the argument is that the counterclaims are in response to her breach of contract claims rather than her petitioning activity relative to the discrimination and harassment complaints. Mantell alleges that there was an oral contract to enter into a settlement agreement between her and the defendants. Her allegation is that DiBona and P&J.V., with Viscariello’s permission, refused to sign the settlement agreement as they had previously agreed to do, giving rise to her contract claims. The defendants allege that Mantell’s contract claims are an abuse of process, malicious prosecution, and the result of a conspiracy.
First, Mantell must show that the counterclaims are based only on her petitioning activity. The defendants use identical language in the counterclaims against Brown and Mantell, asserting only conclusory allegations that Mantell “conspired with other employees . . .’’to extort money from the defendants, “instituted civil proceedings knowing that the claims advanced . . . were not true and knowing that the claims advanced were frivolous,” and filed claims that are “false, groundless, and constitute malicious prosecution.” Unlike the defendants’ counterclaims against Brown, the petitioning activity here is Mantell’s contract claims rather than her complaints relative to sexual harassment and discrimination.
The defendants rely on Marabello v. Boston Bank Corp., 463 Mass. 394 (2012), for the assertion that *524 claims involving settlement agreements are separate and distinct from the petitioning activity. This court does not read Marabello to create such a rule. In that case, the defendant had a signed settlement agreement with a town to remove mulch from a wetland area that the plaintiff owned. Id. at 397. The defendant breached its settlement agreement with the town, which left the plaintiff open to fines from the town. Id. The special motion to dismiss was denied because the plaintiffs claims arose not out of the defendant’s involvement in court with the town, but out of the failure of the defendant to remove the mulch from plaintiffs property, which is separate from the legal proceedings between the town and the defendant. Id. at 399. The case at hand is not analogous. Here, the counterclaims Mantell seeks to dismiss arise out of her petitioning activity in alleging that DiBona and P&J.V. breached the agreement to settle rather than some other, additional, harmful activity.
Sanders v. DeNisco, 7 Mass. L. Rptr. 672 (1997) (Welch, J.), on which defendants also rely, is similarly distinguishable from the case at hand. There, the plaintiff filed a Chapter 40A action to prevent development of a neighboring parcel of land. The parties reached a settlement agreement on the 40A suit. Sometime after the settlement agreement was signed, the plaintiff again filed suit against the defendants, alleging that they failed to live up to the terms of the agreement. The defendants filed counterclaims alleging that the plaintiffs had also failed to adhere to the terms of the agreement. The court denied the plaintiffs motion to dismiss the defendant’s counterclaims under anti-SLAPP because the counterclaims were not based on the original 40A petitioning activity, but rather a separate claim based on the failure to comply with the terms of the settlement agreement.
This case is distinguishable because the defendants’ counterclaims do not rest on anything other than Mantell’s petitioning of the court on contract claims. The defendants argue that the conspiracy counterclaim is based on Mantell’s cooperation with Brown to extract money from the defendants. However, even after Mantell was aware that Brown would be filing her own MCAD complaint, Mantell signed the original settlement agreement and sent it to the defendants. It was the defendants who refused to settle in accordance with the agreed upon terms. The defendants do not allege that Mantell used Brown’s involvement to bolster her own claims or coerce better settlement terms, which might give rise to the conspiracy claim. Thus, the counterclaim rests solely on Mantell’s petitioning for relief from the court on the contract claims.
The defendants do not point to any activity outside of Mantell’s petitioning activity that would support an abuse of process or malicious prosecution counterclaim. On the contrary, the fact that Mantell was willing to, and attempted to, complete the settlement agreement under terms agreed to by the defendants prior to any complaint by Brown undermines the basis for the claims. As with Brown, the pleadings do not reflect an ulterior motive or malice in Mantell’s petitioning activity. See McLarnon, 431 Mass, at 349; Adams, 62 Mass.App.Ct. at 855.
The burden is then on the defendants to show that Mantell’s contract claims are devoid of factual support or have no arguable basis in the law. Baker, 434 Mass, at 553. The petitioning activity need only have a reasonable foundation in fact. See Wegner, 451 Mass, at 6 (reasonable belief that plaintiff had an attempted larceny claim against defendant precluded dismissal under anti-SLAPP even where belief was misinformed). Mantell alleges that the defendants agreed to settle the matter, which is evidenced by the email between Attorney Carlson and the defendants in which the defendants agree to material terms of the contract and ask for a draft to be made. There was thus a reasonable basis for Mantell to believe that a contract existed for which she was entitled to recovery upon a breach by the defendants. See Northrup v. Brigham, 63 Mass.App.Ct. 362, 367 (2005) (elements of contract are offer, acceptance, and an exchange of consideration or meeting of minds). As the defendants have failed to show that “no reasonable person could conclude that there was [a basis in law] for [the petitioning activity],” Baker, 434 Mass, at 555 n.20, Mantell’s motion to dismiss must be allowed.
III. Attorneys Fees
The plaintiffs have both requested reasonable attorneys fees and costs. The anti-SLAPP statute requires the payment of attorneys fees and costs if the judge allows a special motion to dismiss. G.L.c. 231, §59H. The judge has no discretion because the statue states that the court “shall award costs and reasonable attorneys fees” in the event an anti-SLAPP motion is allowed. McLarnon, 431 Mass, at 350. Therefore, the plaintiffs are awarded attorneys fees and costs.
With respect to Brown, counsel’s hourly rate is $350.00 an hour, for 4.1 hours of legal services provided in this case, totaling $1,435.00.
For representation of Mantell, counsel seeks $6,755.00 for 19.3 hours of legal services rendered at a rate of $350.00 per hour.
ORDER
For the foregoing reasons, Brown’s special motion to dismiss is ALLOWED and Mantell’s special motion to dismiss is ALLOWED; the defendants’ counterclaims for abuse of process, malicious prosecution, and conspiracy against both plaintiffs are dismissed pursuant to G.L.c. 231, §59H. The plaintiffs are awarded costs and reasonable attorneys fees.

Viscariello is not a named party in Brown’s complaint.