Fabricant, Judith, J.
INTRODUCTION
This action arises from a conflict among shareholders in a close corporation. The matter is before the Court on plaintiffs special motion to dismiss the *430 defendants’ counterclaims pursuant to G.L.c. 231, §59H, the anti-SLAPP act,[3] and, as to count III of the counterclaim, for failure to state a claim on which relief can be granted, pursuant to Mass.R.Civ.P. 12(b)(6). For reasons that will be explained, plaintiffs special motion to dismiss will be allowed as to count I of the counterclaim, and the 12(b)(6) motion will be allowed as to count III.
BACKGROUND
The pleadings provide the following factual background. In March 1975, the individual defendants, John E. Murray (Murray), Stephen P. Hopkins (Hopkins) and Paul C. Ryan (Ryan) formed Olympic Adhesives, Inc., a manufacturer of industrial adhesives. Each of the three defendants was issued class A common stock, with voting rights; their shares amounted to ninety percent of ownership. The plaintiff, Merek Rubin, an attorney, advised the defendants regarding the formation of the company and the resolution of a previous dispute. As partial compensation for those services, he received non-voting class B common stock equivalent to ten percent of ownership. His share later increased to 10.6%.[4] At all relevant times the three individual defendants have been officers, directors, and employees of the company. Rubin served as corporate counsel until 1981, but ceased involvement except as a shareholder thereafter, although he performed certain legal services for Hopkins and Ryan in the 1990s.
In 2000, Rubin filed suit against the defendants in Norfolk Superior Court, Rubin v. Murray, C.A. 2000-0433 (Rubin I). His complaint in that action alleged that the defendants had paid themselves excessive compensation, while declining to make any dividend distributions to shareholders, thus effectively depriving him of any economic benefit of his stock ownership. After a bench trial in the summer of 2005, Judge Patrick Brady ruled that the defendants were entitled to compensation in an amount no more than ten percent of Olympic’s net sales per year; he ordered them to repay to the company all monies received in excess of that amount, with interest, as well as attorneys fees expended by the company. Judgment entered on September 30, 2005, in the amount of $9,753,992, including pre-judgment interest.[5] Defendants’ appeal from that judgment remains pending.
In this action, filed on April 16, 2008, Rubin alleges that in the years since entry of the judgment in the prior action, the defendants have continued to overpay themselves; have paid personal legal expenses with corporate funds; and have unlawfully amended the company’s articles and by-laws to authorize issuance of stock options so as to dilute Rubin’s interest. He sues on behalf of himself and derivatively on behalf of Olympic, claiming breach of fiduciary duty (counts I and II), misappropriation of corporate assets (count III), waste of corporate assets (count VI), and unjust enrichment (count VII); and seeking an accounting (count IV), imposition of a constructive trust (count V), and declaratory judgment with respect to the amendments (count VIII).
The defendants’ counterclaim asserts three counts: abuse of process (count I); breach of fiduciary duty (count II); and violation of 18 U.S.C. §1962(c), the Racketeer Influenced and Corrupt Organizations statute (RICO) (count III). All three counts are based on these alleged facts: Rubin’s share of the 2005 judgment, if distributed as dividends after payment of corporate taxes, would have been approximately $569,000 at the time of its entry. Since then, Rubin has demanded $3,800,000 for settlement of his claims and purchase of his stock. He has also demanded corporate financial and other records, by two letters from his attorney in June 2006; objected to amendments to the company’s articles and by-laws and accused the defendants and their counsel of violations of law; and, by a letter from his counsel dated December 20, 2007, falsely accused defendants of paying themselves excessive compensation, and demanded their personal financial and tax information. He took these actions, the counterclaim alleges, “for the purpose of pressuring [defendants] to pay him monies well in excess of any amount to which he would be entitled under either the 2005 judgment, for the years subsequent, ... or as a 10.6% shareholder.” He then filed this action “for the improper and ulterior purpose of further pressuring” defendants to the same end. Rubin moves to dismiss all three counts pursuant to the anti-SLAPP act. With respect to the RICO count, he seeks dismissal alternatively for failure to state a claim.[6]
DISCUSSION
1. The Special Motion to Dismiss Pursuant to the Anti-SLAPP Statute
SLAPP suits “are . . . meritless suits that use litigation to intimidate opponents’ exercise of rights of petitioning and speech." Vittands v. Sudduth, 49 Mass.App.Ct. 401, 413 (2000). The statute “walks an uneasy line between protecting the right of citizens to petition government for redress of grievances and preserving the longstanding common-law right of individuals to seek redress in court for defamation and other civil wrongs.” Kalter v. Wood, 67 Mass.App.Ct. 584, 591 (2006).
Section 59H of G.L.c. 231 states in pertinent part that “[i]n any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party’s exercise of its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss.” The Legislature thereby “provided a means through which persons who have been made the subject of civil litigation in retaliation for the exercise of their right to petition may be spared *431 the expense and the burden of defense of the action.” Fisher v. Lint, 69 Mass.App.Ct. 360, 362 (2007).
A special motion to dismiss requires the Court to conduct a two-pronged inquiry. The moving party, in this case Rubin, must first make “a threshold showing through the pleadings and affidavits that the claims against [him] are based on the petitioning activity alone and have no substantial basis other than or in addition to the petitioning activities.” Vittands, 49 Mass.App.Ct. at 414, citing Duracrqft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 167-68 (1998). Should the Court conclude that the claims are based solely on petitioning activity, the burden then shifts to the non-moving pariy, in this case the defendants, to show by a preponderance of the evidence, based on the pleadings and affidavits, both that the petitioning activity was without any reasonable factual support or basis in law, and that it caused them actual harm. McLarnon v. Jokish, 431 Mass. 343, 348-49 (2000); Duracraft, 427 Mass. at 167-68.
The anti-SLAPP statute defines petitioning activity as “(1) any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; (2) any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; (3) any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; (4) any statement reasonably likely to enlist public participation in an effort to effect such consideration; or (5) any other statement falling within constitutional protection of the right to petition government.” G.L.c. 231, §59H. Massachusetts court have determined that “the Legislature intended to enact very broad protection for petitioning activities.” Duracraft, 427 Mass. at 162.[7]
A. Count I — Abuse of Process
The anti-SLAPP statute effectively prohibits most, although not all, abuse of process claims, since such claims are by definition based on the petitioning activity of filing a lawsuit. Adams v. Whitman, 62 Mass.App.Ct. 850, 855 (2005). As the Appeals Court explained in Adams, for an abuse of process claim to escape the first prong of a special motion, it is not sufficient to allege merely that process was obtained for an improper purpose, although that allegation is necessary to state the elements of abuse of process.[8] To survive an anti-SLAPP motion, the claimant must allege conduct after the issuance of process “that amounted to an affirmative, subsequent misuse of the process.” 62 Mass.App.Ct. at 855. The misuse of the process must involve a “form of coercion to obtain collateral advantage not properly involved in the proceeding itself.” Id. at 853. See also Fabre, 436 Mass. at 524 n. 10. Conduct that occurred before the issuance of process cannot meet that requirement.
Here, the defendants’ claim of abuse of process is based solely on the filing of Rubin’s lawsuit. Although the counterclaim contains other factual allegations, none of them involve the use or issuance of process, and none of the conduct is alleged to have occurred after the filing of this suit.[9] Rubin has thus met the first prong of the test under the anti-SLAPP act.
The burden shifts to the defendants to show by a preponderance of the evidence that Rubin’s complaint is devoid of factual support or arguable basis in law. See Fabre, 436 Mass. at 524; Baker v. Parsons, 434 Mass. 543, 552 (2001). The inquiry is not whether Rubin’s claims will be successful, but rather whether they contain any factual or legal merit at all. Wenger v. Aceto, 451 Mass. 1, 7 (2008). Consideration of this question requires a preliminary evaluation of Rubin’s claims, based on the materials presently before the Court, which consist of the verified complaint and verified counterclaim.
Rubin’s claims, although expressed in eight counts, rest on two substantive allegations: (1) the defendants overpaid themselves after the Norfolk County judgment; and (2) the defendants unlawfully amended the corporate articles and by-laws. On the first issue, Rubin’s contention is that the defendants paid themselves compensation exceeding the level that Judge Brady determined to be the maximum appropriate, thereby depleting the corporation of profits from which it would otherwise have paid dividends to all shareholders, including him. In particular, the complaint alleges in paragraph 20 that for the fiscal year ending February 2006, Olympic’s net income was $10,018; the three defendants received compensation totaling $1,480,048; and the company paid no dividend. Paragraph 21 alleges that for 2007, the company’s net income was $288,907; the individual defendants received a total of $1,674,954; and Rubin received a dividend of $11,000. The defendants’ response to these allegations consists of the assertion, set forth in their verified counterclaim, that they have “provided compensation ... [to themselves] in amounts consistent with the findings of the Norfolk Superior Court as to appropriate compensation.”
These allegations of the verified pleadings provide little basis for the Court to evaluate Rubin’s claim. The Court cannot apply Judge Brady’s formulation directly, because the record does not indicate the amount of Olympic’s net sales during the relevant years. The most the Court can do with Rubin’s allegations is to discern that the amounts the defendants received in 2006 and 2007 were more than the average annual amount that Judge Brady determined to be reasonable for the previous eleven years based on net sales in those years; that net income for 2006 was low, perhaps suggesting a continuation of the previous pattern of setting compensation at a level such as to minimize net income; and that for 2007 the company distributed only about a third of its net income as *432 dividends. These conclusions do not establish a violation of Judge Brady’s ruling, but they do tend to suggest that such a violation may have occurred.
On the other side of the scale, what defendants offer to meet their burden is nothing more than a bald conclusion. They provide no specifics, although the information necessary to refute Rubin’s claim, and to establish their compliance, would surely be available to them if it exists. The burden at this stage is on the non-movant to show that Rubin’s claims lack any basis in facts or law. The defendants’ unsupported assertion does not suffice to meet that burden with respect to the claim of excess compensation. See MacDonald v. Paton, 57 Mass.App.Ct. 290, 295-96 (2003) (where non-movant failed to provide evidentiary support, special motion to dismiss must be allowed). The Court therefore need not address Rubin’s claim regarding amendments to articles and by-laws; the special motion to dismiss must be allowed as to the abuse of process claim.[10]
B. Count II — Breach of Fiduciary Duly
The defendants’ breach of fiduciary duty claim presents different issues under the anti-SLAPP act. The claim, as set forth in paragraph 31 of the counterclaim, is that “by demanding that [defendants] pay him monies far in excess of that to which he is legally entitled, filing suit for ulterior and malicious purposes, repeatedly harassing Olympic and its officers and directors with unwarranted accusations and threats, and furthering that harassment by making repeated demands for corporate and personal financial records, Rubin repeatedly breached his fiduciary duty” to defendants. The particular actions alleged, aside from the filing of this case and Rubin I, are the following: (1) the making of demands for records, resulting in visits to the company’s offices to copy records; (2) the sending of two letters by Rubin’s attorney in 2006 obj ecting to amendments to articles and by-laws, and accusing defendants and corporate counsel of various breaches of legal duties;[11] and (3) the sending of a letter dated December 20, 2007, by Rubin’s attorney, accusing defendants of breaches of duty, and demanding personal financial and tax information.[12]
The first prong of the analysis under the anti-SLAPP act, as discussed supra, is whether the claim is based solely on protected petitioning activity — that is, whether each of the actions alleged constitutes petitioning activily under the statutory definition. As discussed, the filing of lawsuits clearly meets that test, as does communication about pending litigation. The three actions listed supra, however — demanding records and sending the letters described — are different.
In determining whether a communication is protected activity under the anti-SLAPP act, the central inquiry is whether the communication “had the potential or intent to redress a grievance, or directly or indirectly to influence, inform, or bring about governmental consideration of the issue.” Global NAPs, Inc. v. Verizon New England, Inc., 63 Mass.App.Ct. 600, 607 (2005). See also Kobrin v. Gastfriend, 443 Mass. 327, 337 (2005) (statute designed to protect citizens seeking governmental relief). Here, at the time of the conduct alleged, the issues that had been litigated in Rubin I — that is, the propriety of the defendant’s compensation for years preceding the 2005 judgment— were pending on appeal. The issues raised by these communications, however — Rubin’s right of access to certain records, the propriety of the defendants’ compensation for 2006 and later years, and the propriety of the amendments to articles and by-laws — "were not ‘under consideration’ in any governmental proceeding." Giuffrida v. High Country Investor, Inc., 73 Mass.App.Ct. 225, 2008 WL 4951595 at *11. “While there are important reasons to afford legal protection to prelitigation demand letters, as recognized by the existence of the litigation privilege . . . the anti-SLAPP statute does not. . . provide additional protection for such communications.” Id. These three actions were not petitioning activily protected pursuant to G.L.c. 231, §59H. The special motion to dismiss must therefore be denied as to Count II.[13]
C. Count III: RICO
Count III alleges that Rubin violated the RICO statute, 18 U.S.C. §1962 et seq., in that “through the commission of two or more predicate acts . . . constituting a pattern of racketeering activity, [he] participated in an enterprise, Olympic, . . . the activities of which affected interstate commerce.” The “predicate acts,” the complaint alleges, “consisted of threats made in a malicious and willful manner, to obtain money or other advantage with the intent to extort money,” including demanding that defendants “pay him monies far in excess of that to which he is legally entitled, filing suit for ulterior and malicious purposes, repeatedly harassing Olympic and its officers and directors with unwarranted accusations and threats, and furthering that harassment by making repeated demands for corporate and personal financial records.” For the reasons already discussed with respect to count II, these activities, other than the filing of suit, do not fall within the definition of petitioning activity under the anti-SLAPP act. Accordingly, the special motion to dismiss must be denied as to count III.
2. The Motion to Dismiss Count III for Failure to State a Claim
To withstand a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), a complaint must contain “allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect [a] threshold requirement . . . that the plain statement possess enough heft to sho[w] that the pleader is entitled to relief.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1966 (2007) (internal quotations omitted). While a complaint need not set forth detailed factual allegations, a claimant is required to *433 present more than labels and conclusions, and must raise a right to relief “above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact).” Id. See also Harvard Crimson, Inc. v. President & Fellows of Harvard Coll., 445 Mass. 745, 749 (2006); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991) (court must take as true allegations of complaint as well as all inferences therefrom).[14]
A RICO claim must allege facts showing (1) a violation of the RICO statute; (2) injury to a business or property; and (3) that the violation caused the injury. Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2nd Cir. 2008). RICO makes it unlawful “for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in ... a pattern of racketeering activity or collection of unlawful debt.” 18 U.S.C. §1962(c). A motion to dismiss will be allowed unless the claimant alleges “each of the four elements required by the statute: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.” Solo-Negron v. Taber Partners I, 339 F.3d 35, 38 (1st Cir. 2008). Rubin argues that the allegations of the complaint fail to show either the conduct of an enterprise or a pattern. The Court agrees.[15]
For a person to conduct an enterprise, within the meaning of the RICO statute, he must “conduct or participate, directly or indirectly, in the conduct of such enterprise’s affairs.” Reves v. Ernst & Young, 507 U.S. 170, 177 (1993). To conduct an enterprise indicates some degree of direction. Id. at 178. A party can be liable based on the conduct of an enterprise only if he has “participated in either the operation or management of the enterprise itself.” Id. at 183. Defendants do not contend that Rubin in any way controls or directs Olympic’s affairs. To the contrary, the pleadings indicate that Rubin’s professional association with Olympic ended in 1981; since that time, his role has been only as a non-voting shareholder. Thus, although Olympic could be an enterprise for RICO purposes, see Aetna Cas. Sur. Co. v. P&B Autobody, 43 F.3d 1546, 1557-58 (1st Cir. 1994), and Rubin has some association with it as a shareholder, the allegations of the counterclaim are not sufficient to show that he has conducted that enterprise for purposes of RICO liability.
The allegations are similarly deficient with respect to the element of a pattern. “[T]o prove a pattern of racketeering activity a plaintiff... must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.” H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989). Although these two concepts may overlap, they must be stated and analyzed separately. Id If the criminal acts alleged have, among other things, the same or similar purpose or participants, and are not isolated events, they are related Id.
“ ‘Continuity’ is both a closed-and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition ... It is, in either case, centrally a temporal concept . . .” Id. at 241-42. As to close-ended continuiiy, a plaintiff must demonstrate that the predicate acts occurred over a substantial period of time; a few weeks or months will not suffice. Id. at 242. Federal courts have held that, although there is no bright line, in general conduct that spans a period of time of less than two years does not satisfy the continuity requirement. Spool, 520 F.3d at 184. See also Apparel Art Intern, Inc. v. Jacobson, 967 F.2d 720, 723 (1st Cir. 1992), and cases cited. As to open-ended continuity, there must be “a specific threat of repetition extending indefinitely into the future . . . [or] the predicate acts or offenses [must be] part of an ongoing entity’s regular way of doing business.” H.J., Inc., 492 U.S. at 242.
The predicate acts to which the defendants point are demands that they pay Rubin more than he is entitled; threats of litigation and accusations of wrongdoing; repeated demands for financial records; and filing the instant action with a malicious and ulterior motive. Even viewing the factual allegations in the light most favorable to the defendants, the earliest act alleged is Rubin’s settlement demand in August 2005; the latest, other than the filing of this suit, is the request for records in December 2007. The goal of all Rubin’s acts, defendants contend, was to obtain more from them than he is owed. A single, discrete goal, with a small number of victims, and no potential to extend to other persons or entities, fails to satisfy RICO’s requirement of a pattern of racketeering activity. Edmondson & Gallagher v. Alban Towers Tenants, 48 F.3d 1260, 1265 (D.C.Cir. 1995). See also Eagle Inv. Sys. Corp. v. Tamm, 146 F.Sup.2d 105, 110 (D.Mass. 2001) (where the acts alleged make up a single effort, “over a finite period of time,” there cannot be a RICO violation); Feinstein v. Nanbar Realty Corp., 963 F.Sup. 254, 259 (S.D.N.Y. 1997) (several different tactics in furtherance of single goal does not translate into “one with multiple goals and/or victims and does not mandate a finding of continuity sufficient to support a RICO claim”). Where all the alleged acts occurred within two years, and were directed toward a single discrete goal, the conduct alleged does not meet the requirement of a pattern. See, e.g. Spool, 520 F.3d at 184; Edmondson, 48 F.3d at 1265.
Defendants argue that Rubin’s conduct satisfies the requirements for open-ended continuity because Rubin’s demand for dividends will likely continue into the future. Open-ended continuity requires “far more than a hypothetical possibility of further predicate acts.” Edmondson, 48 F.2d at 1264. See also H.J., Inc., 492 U.S. at 242 (in order to supply requisite continuity, predicate acts must “include a specific threat of repetition extending indefinitely into the future . . .”). *434 The litigation may take longer than defendants wish, but it will ultimately end with either settlement or judgment; what will happen after that is speculation.
4. Attorneys Fees and Costs
The anti-SLAPP statute mandates an award of attorneys fees and costs where the Court allows a special motion to dismiss. G.L.c. 231, §59H. See also McLarnon v. Jokish, 431 Mass. 343, 350 (2000). Accordingly, Rubin is entitled to his attorneys fees and costs incurred specifically in defense of Count I of the counterclaim. The fees and costs to be awarded are likely to be limited to a portion of those incurred in connection with this motion. The Court will consider an application submitted promptly in accord with Superior Court Rule 9A.
CONCLUSION AND ORDER
For the reasons stated, the Plaintiffs Special Motion to Dismiss Defendants’ Counterclaim Pursuant to G.L.c. 231, §59H, is ALLOWED as to Count I, and DENIED as to Count II. The Plaintiffs Motion to Dismiss Count III of Defendants’ Counterclaim Pursuant to Mass.R.Civ.P. 12(b)(6) is ALLOWED.

SLAPP is an acronym for Strategic Litigation Against Public Participation. The Cadle Co. v. Schlichtmann, 448 Mass. 242, 243 n.1 (2007).

That change resulted from Murray’s sale of some shares back to Olympic.

Judge Brady found that net sales during the eleven years in question (1995 through 2005) were $140,290,000, so that the maximum total compensation that would have been reasonable for the three defendants for the eleven-year period was $14,029,000, or $1,275,364 per year.

After service of the motion to dismiss, defendants moved to stay this action pending resolution of their appeal from the judgment in Rubin I. The Court (Neel, J.) denied that motion on the ground that some of the issues raised in this case are different from those decided in Rubin I, commenting that “to the extent that issues necessary to the resolution of this case were necessary to the resolution of the Norfolk case and were adjudicated principles of res judicata and collateral estoppel will apply.”

In particular, decisions have established that communications regarding litigation pending in either a trial or an appellate court, including communications seeking settlement, are protected. See, e.g. Plante v. Wylie, 63 Mass.App.Ct. 151, 159 (2005). A pre-suit demand letter is not protected activity within the meaning of c. 231, §59H, but cannot form the basis of a claim, since it is absolutely privileged under the common law. See Guiffrida v. High Country Investor, Inc., 73 Mass.App.Ct. 225, 2008 WL 4951595 at * 11 (2008); compare e.g. Sriberg v. Raymond, 370 Mass. 105, 109 (1976) (where communication to prospective defendant relates to proceeding contemplated in good faith, privilege should attach); Sullivan v. Birmingham, 11 Mass.App.Ct. 359, 361-62 (1981); Fisher, 69 Mass.App.Ct at 369-70; Blanchette v. Cataldo, 734 F.2d 869, 877 (1st Cir. 1984) (applying Massachusetts law).

The elements of the tort of abuse of process are “(1) ‘process’ was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage.” Vittands v. Sudduth, 49 Mass.App.Ct. 401, 406 (2000).

In this regard, the defendants incorrectly rely on The Cadle Co. v. Schlictmann, 448 Mass. 242, 250-52 (2007), for the proposition that statements made prior to litigation later instituted on the same subject do not qualify as statements made in connection with an issue under judicial review. The Cadle court held that certain statements were not petitioning activity because they were made for commercial purposes, not because they were made prior to litigation. Id. at 254.

Since the defendants have failed to meet their burden as to the compensation issue, the Court need not consider whether they have done so as to the claims based on amendments. The Court notes, for whatever guidance it might provide the parties, that those claims appear less than strong. General Laws c. 156B, §20, authorizes stockholders to amend by-law provisions establishing preemptive rights. As the holder of non-voting stock, Rubin had no right to participate in any vote on proposed by-law amendments. Given that circumstance, it is difficult to see how the 2006 unanimous written consent of voting shareholders to eliminate the preemptive rights that were established in the company’s original by-laws could have deprived Rubin of any legally protected rights.

These letters are not before the Court.

This letter is appended to Rubin’s complaint. It asserts hisf demand, pursuant to G.L.c. 156D, §7.42, that the defendants cease alleged misappropriation of corporate assets and return funds improperly taken, and further demands individual tax returns. The letter goes on both to propose settlement discussions and to threaten suit in the absence of a global resolution.

Rubin has not moved to dismiss Count II of the counterclaim for failure to state a claim pursuant to Mass.RCiv.R 12(b)(6). The Court therefore does not consider whether the allegations of Count II state a claim for breach of fiduciary duty.

This standard is particularly apt in the case of a RICO claim. Even under the more lenient standard previously in effect, the First Circuit advised: “in cases alleging civil RICO violations, particular care is required to balance the liberality of the Civil Rules with the necessity of preventing abusive and vexatious treatment to defendants . . . Civil RICO is an unusually potent weapon — the litigation equivalent of a thermonuclear weapon . . . For these reasons it would be unjust if a RICO plaintiff could defeat a motion to dismiss simply by asserting an inequity attributable to a defendant’s conduct and tacking on the self-serving conclusion that the conduct amounted to racketeering. Hence, to avert dismissal under Rule 12(b)(6), a civil RICO complaint must, at a bare minimum, state facts sufficient to portray (i) specific instances of racketeering activity within the reach of the RICO statute and (ii) a causal nexus between that activity and the harm alleged.” Miranda v. Ponce Federal Bank, 948 F.2d 42, 44 (1st Cir. 1991).

Although Rubin has not argued the point, the Court is also of the view that the allegations of the complaint fail to show racketeering activity. Defendants refer to Rubin’s activities as “extortion,” but the label hardly fits the facts actually alleged: that he proposed settlement on terms defendants consider excessive, that he accused them of further misconduct which they deny, and that he requested access to records. Defendants do not allege any threat of violence or of retaliation other than by means of litigation, any fraud or deceit, or any other conduct that could fairly be characterized as criminal activity. Indeed, the facts regarding the settlement demand fail to show any excess, since the demand encompassed sale of Rubin’s stock, as well as settlement of the prior claims, and nothing alleged provides a basis to determine the value of the stock.